

1  FRAMROZE VIRJEE (SBN 120401)
   fvirjee@omm.com
2  ADAM J. KARR (SBN 212288)
   akarr@omm.com
3  O'MELVENY & MYERS LLP
   610 Newport Center Drive, 17th Floor
4  Newport Beach, CA 92660-6429
   Tel: 949.760.9600
5  Fax: 949.823.6994

6  JOEL L. LENNEN
   jlennen@eckertseamans.com
7  ECKERT SEAMANS CHERIN &
   MELLOTT, LLC
8  600 Grant Street, 44th Floor
   Pittsburgh, PA 15219
9  Tel: 412.566.6000
   Fax: 412.566.6099
10 [Will Apply for *Pro Hac Vice* Admission]

11 Attorneys for Defendants,
   SOH DISTRIBUTION COMPANY, INC.
12 and G&A SNACK DISTRIBUTING, INC.

13

14

15

16

                **UNITED STATES DISTRICT COURT**

                **CENTRAL DISTRICT OF CALIFORNIA**

17 CHARLEE HARGIS, individually, and          Case No.  **SACV09-00685 AG (MLGx)**
   on behalf of all others similarly
18 situated,
                                              **DEFENDANTS, SOH**
19              Plaintiff,                     **DISTRIBUTION COMPANY,**
                                              **INC.'S AND G&A SNACK**
20      vs.                                   **DISTRIBUTING, INC.'S NOTICE**
                                              **OF REMOVAL**
21 G & A SNACK DISTRIBUTING,
   INC., a.k.a. G and A SNACK
22 DISTRIBUTING, INC.; SOH
   DISTRIBUTION COMPANY, INC.;
23 and DOES 1 through 50,

24              Defendants.

25

26

27

28

─────────────────────────────────────────────
                        DEFENDANTS SOH'S & G&A'S NOTICE OF REMOVAL

1　　　　**TO THE HONORABLE JUDGES OF THE UNITED STATES**

2　　**DISTRICT COURT FOR THE CENTRAL DISTRICT OF**

3　　**CALIFORNIA AND TO PLAINTIFF AND PLAINTIFF'S ATTORNEY**

4　　**OF RECORD:**

5　　　　　　PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1332, as

6　　amended in relevant part by the Class Action Fairness Act of 2005

7　　("CAFA"), and 28 U.S.C. §§ 1441, *et seq.*, and as authorized by 28 U.S.C.

8　　§ 1453, Defendants, SOH Distribution Company, Inc. ("SOH") and G&A

9　　Snack Distributing, Inc. ("G&A") (SOH and G&A shall sometimes be

10　　collectively referred to herein as "Removing Defendants"), by their

11　　undersigned attorneys of record, O'Melveny & Myers LLP and Eckert

12　　Seamans Cherin & Mellott, LLC, hereby remove the above-captioned civil

13　　action, and all claims and causes of action therein, from the Superior Court of

14　　the State of California, County of Orange, to the United States District Court

15　　for the Central District of California, Southern Division.  Removing

16　　Defendants appear for the purpose of removal only and for no other purpose

17　　whatsoever and reserve all rights, claims and defenses of any nature

18　　whatsoever, including, but not limited to, defenses related to service of

19　　process, jurisdiction, and venue, and state the grounds for removal as

20　　follows:

21

22　　**I.**　　　**REMOVING DEFENDANTS HAVE SATISFIED THE**

23　　　　　　**PROCEDURAL REQUIREMENTS FOR REMOVAL**

24　　　　　　**UNDER 28 U.S.C. §§ 1441, *ET SEQ*.**

25　　　　　　1.　　　On or about May 5, 2009, plaintiff Charlee Hargis ("Plaintiff")

26　　filed a Class Action Complaint (the "Complaint") in the Superior Court of

27　　the State of California, Orange County, Case No. 30-2009-00266882, against

28

1

1    G&A, SOH and unnamed Does 1 through 50.

2        2.      The seven-count Complaint alleges the following claims:

3    (1) failure to reimburse expenditures in violation of California Labor Code §

4    2802; (2) failure to pay wages at overtime rates in violation of California

5    Labor Code § 1194 and California Industrial Welfare Commission ("IWC")

6    Wage Order 1; (3) failure to provide meal periods; (4) failure to provide rest

7    periods; (5) failure to pay all wages upon ending of employment; (6) failure

8    to furnish itemized statements in violation of California Labor Code § 226;

9    and (7) violation of California Business and Professions Code §§ 17200, *et*

10    *seq.* Plaintiff, allegedly on behalf of herself and the purported class, seeks

11    relief that includes: statutory damages for the various claimed violations of

12    certain sections of the California Labor Code; reimbursement of alleged

13    expenditures and losses; unpaid wages at overtime rates (and payment of

14    statutory penalties related thereto); as well as restitution, permanent

15    injunctive and declaratory relief, and prejudgment interest.

16        3.      The Complaint and summons were served on SOH's and G&A's

17    registered agent for service of process on May 11, 2009. No other pleadings

18    have been filed in the state court action, and the state court has not entered

19    any orders in the action.

20        4.      This Notice of Removal is timely filed pursuant to 28 U.S.C.

21    § 1446(b), as the Notice is filed on or before June 10, 2009, which is within

22    thirty (30) days after May 11, 2009, the date on which Removing Defendants

23    were served the Complaint, and/or within thirty (30) days after Removing

24    Defendants became aware of facts supporting the grounds for removal.

25        5.      Pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 1453(b), any

26    action over which the District Court has original jurisdiction pursuant to 28

27    U.S.C. § 1332(d) may be removed to the District Court for the district and

28

DEFENDANTS SOH'S & G&A'S NOTICE OF REMOVAL

division within which such action is pending.  The action being removed was filed and is pending in the California Superior Court for the County of Orange and, accordingly, this Notice of Removal must be filed in the United States District Court for the Central District of California, Southern Division.

6.     Pursuant to 28 U.S.C. § 1453(b), where jurisdiction is based on the provisions of 28 U.S.C. § 1332(d), "such action may be removed by any defendant without the consent of all defendants."  Even if Plaintiff had specifically identified any other defendants in this action, which she has not, the consent of any such co-defendants would not be required to effectuate removal.

7.     Removing Defendants have complied with 28 U.S.C. § 1446(a) and (d).  Under 28 U.S.C. § 1446(a), a true and correct copy of all the process, pleadings or orders on file in the state court or served on SOH and G&A in the state court are attached hereto as Exhibit "A."  Pursuant to 28 U.S.C. § 1446(d), a notice of filing of removal, with a copy of this Notice of Removal annexed thereto, will be filed with the clerk of the Superior Court of the State of California, County of Orange, Case No. 30-2009-00266882, and Removing Defendants will serve a notice of filing of removal, with a copy of the Notice of Removal attached thereto, on Plaintiff's attorneys. Copies of the notice and the certificate of service of the notice to Plaintiff and the Superior Court of the State of California, County of Orange, are attached hereto as Exhibits B, C and D, respectively.  (Exhibit "A" through "G" to that Exhibit, which are duplicates of the Exhibits attached to the instant filing, are not attached; however, Removing Defendants will provide the same upon request of the Court.)

DEFENDANTS SOH'S & G&A'S NOTICE OF REMOVAL

## II.    REMOVAL IS PROPER BECAUSE THE COURT HAS JURISDICTION PURSUANT TO 28 U.S.C. § 1332(d).

8.    This Court has subject matter jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), because this is a claimed class action in which:  (1) there are over 100 alleged class members in Plaintiff's proposed class (28 U.S.C. § 1332(d)(5)(B)); (b) the combined alleged claims of all potential class members and, thus, the alleged amount in controversy, in the aggregate, exceeds $5,000,000 exclusive of interest and costs (28 U.S.C. § 1332(d)(2)); and (c) the requisite diversity exists in that "any member of a class of plaintiffs is a citizen of a State different from any defendant."  (28 U.S.C. § 1332(d)(2)(A)).

### A.    Plaintiff's Class Action Consists Of More Than 100 Members.

9.    This action is a "class action" within the meaning of CAFA because Plaintiff seeks to represent a class of persons in a civil action filed under California Civil Procedure Code § 382 and "other applicable class action law."  (Complaint ¶ 11.)

10.    Specifically, Plaintiff seeks to represent a class of "[a]ll persons who, on or after the date that is four years before the initial complaint in this case was filed, have been, are, or will be working on delivery routes in which they deliver snack foods or other items furnished by any of the Defendants."  (Complaint ¶¶ 11, 12); *see also* 28 U.S.C. § 1332(d)(1)(B) (defining a class action as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action").

11.    There are 100 or more class members in Plaintiff's purported class, as required by 28 U.S.C. § 1332(d)(5)(B).  Plaintiff has expressly

4

alleged in the Complaint that the members of her purported class are "so numerous that individual joinder of all members is impracticable" and that Plaintiff "is informed and believes and thereon alleges that [the number of class members] is several hundred people or more." (Complaint ¶ 14.)

12.    As of May 5, 2009 (the date of the filing of the Complaint), there were approximately 173 independent operators ("IOs") with distributor agreements with SOH and G&A in California. (*See* Declaration of Deborah Schuman, ¶ 9 ("Schuman Decl."), attached hereto as Exhibit E.) Also, over the course of the four years preceding the filing of the Complaint, there were, on the average, at any one time, approximately 173 total IOs with distributor agreements with SOH and G&A in California and during said four-year period, the distributor agreements for approximately 130 IOs terminated. (Schuman Decl. ¶ 9.)

13.    Accordingly, the number of purported class members in the class alleged by Plaintiff exceeds 100.

**B.    <u>Diversity of Citizenship Is Established</u>.**

14.    The requisite diversity of citizenship exists under 28 U.S.C. § 1332(d)(2) and (d)(7). To establish diversity jurisdiction under CAFA, it is sufficient that any one member of the purported class is a citizen of a state different from any one defendant, in contrast to the complete diversity requirement of typical diversity jurisdiction. 28 U.S.C. § 1332(d)(2)(A).

15.    Upon information and belief, at the time of the filing of this action and as of the date of this Notice, Plaintiff, Charlee Hargis, was a citizen and resident of the State of California. (Schuman Decl. ¶¶ 10-11.)

16.    SOH is a Delaware corporation with its principal place of business in Hanover, Pennsylvania, and therefore, is a citizen of the State of

1  Delaware and the Commonwealth of Pennsylvania.  SOH is not a citizen of

2  California.  (Schuman Decl. ¶ 6.)

3      17.    G&A is incorporated under the laws of California, but this

4  action is removable under CAFA irrespective of the citizenship of G&A.  *See*

5  28 U.S.C. § 1453(b) ("A class action may be removed…without regard to

6  whether any defendant is a citizen of the State in which the action is

7  brought….").

8      18.    Because SOH is incorporated and has its principal place of

9  business outside California, and one or more members of the purported

10 plaintiff class is a citizen of California, the minimal diversity requirement of

11 28 U.S.C. § 1332(d)(2)(A) is satisfied.

12

13   **C.    The Aggregate Alleged Amount-in-Controversy**

14        **Exceeds $5,000,000.**

15      19.    The amount in controversy sought by Plaintiff in this case

16 exceeds the sum or value of $5,000,000, as required by 28 U.S.C. §§

17 1332(d)(2) and 1332(d)(6), the latter of which provides:  "In any class action,

18 the claims of the individual class members shall be aggregated to determine

19 whether the matter in controversy exceeds the sum or value of $5,000,000,

20 exclusive of interests and costs."  By this allegation, and the statements

21 contained in this Notice of Removal, Removing Defendants do not concede

22 that Plaintiff and the alleged class members are owed in excess of $5,000,000

23 or that they are owed any amount whatsoever.  Nevertheless, through the

24 allegations in the Complaint, Plaintiff seeks an amount "in controversy" in

25 this case is in excess of $5,000,000 for the reasons set forth below.

26      20.    The Complaint, although it does not allege a specific dollar

27 amount in damages, seeks relief that includes:  (1) restitution and

28

6

DEFENDANTS SOH'S & G&A'S NOTICE OF REMOVAL

1  compensation for alleged violations of various sections of the California

2  Labor Code and the California Business and Professions Code; (2) statutory

3  penalties to Plaintiff and alleged class members for each such violation; (3)

4  declaratory relief; (4) injunctive relief; and (5) prejudgment interest. (*See*

5  *generally* Complaint; *see* Prayer for Relief, p. 12.).

6          21.    The Complaint purports to articulate seven causes of action. As

7  the calculations below demonstrate, the "amount in controversy" being

8  claimed by Plaintiff, on behalf of herself and the alleged class, in this case is

9  in excess of the jurisdictional threshold.

10         22.    In her First Cause of Action, Plaintiff alleges that Removing

11 Defendants violated California Labor Code § 2802 by failing to reimburse

12 Plaintiff for "necessary expenditures and losses." (Complaint ¶ 22.) Based

13 upon the allegations in the Complaint, all of which are denied by Removing

14 Defendants, a preliminary assessment has been made of a few of the items

15 for which Plaintiff, on behalf of herself and the alleged class members, likely

16 seeks recovery. In the past four years, IOs in California have expended

17 approximately $882,390.00 for the rental of handheld devices to record the

18 purchase and sale of products. (Declaration of Randy Seibert ¶ 8 ("Seibert

19 Decl."), attached hereto as Exhibit F.) Also, in order to distribute the various

20 products, the IOs in California, and elsewhere, primarily utilize trucks to

21 distribute products. Based upon information and belief, a typical IO incurs

22 truck licensing fees in California of approximately $300 per year, which

23 equates to $207,600.00 for the approximately 173 IOs in California over a

24 four year period (*i.e.*, [$300 per year] X [assuming 173 IOs] X [4 years]).

25 (Seibert Decl. ¶ 9.) Additionally, based upon information and belief, on

26 average, over a four-year period, an IO may incur approximately $12,800 for

27 vehicle repair and maintenance, which equates to $2,214,400.00 assuming

28

DEFENDANTS SOH'S & G&A'S NOTICE OF REMOVAL

1    173 IOs at any given time (*i.e.*, [$12,800] X [assuming 173 IOs]).  (Seibert

2    Decl. ¶ 10.)  Finally, based upon information and belief, on a yearly basis, an

3    IO may purchase approximately 2,167 gallons of gasoline and at an average

4    cost of $2.50 per gallon, would pay approximately $5,417.50 per year for

5    gasoline for the vehicle, which over a four year period assuming 173 IOs,

6    equals $3,748,910.00 (*i.e.*, [$5,417.50 per year] X [assuming 173 IOs] X [4

7    years]).  (*Id.* ¶ 11.)  Thus, this claim alone has a potential amount in

8    controversy in excess of $5,000,000.

9         23.     In her Second Cause of Action, Plaintiff alleges that Removing

10   Defendants violated California Labor Code § 1194 and the IWC Wage Order

11   by failing to pay Plaintiff and the alleged class members for overtime

12   compensation.  Plaintiff alleges that she and the alleged class members "very

13   frequently worked, and continue to work in excess of forty (40) hours per

14   week and in excess of eight (8) hours per day." (Complaint ¶ 26.)  Even

15   assuming that Plaintiff and the alleged class members worked only one hour

16   of overtime per week and were paid at the current California minimum wage

17   rate of $8.00 per hour through the entire claimed class period of four years,

18   the claimed amount of damages alleged through this claim would be

19   $287,872.00 based on 173 class members working as IOs at any given time

20   (*i.e.*, [$8.00 per hour] X [52 workweeks] X [4 years] X [assuming 173 class

21   members]).

22        24.     In her Third and Fourth Causes of Action, Plaintiff contends that

23   Removing Defendants "routinely failed, and continue to fail" to provide meal

24   and rest periods as required by California law and that she and the other

25   alleged class members are entitled to one hour of wages for every meal

26   period that was not provided and every day a rest period was not provided.

27   (Complaint ¶¶ 32-33, 37-38.)  Once again, assuming the current California

28

8

minimum wage rate of $8.00 per hour, and that each class member was not provided one meal period and one rest break per day (and is, thus, entitled to two hour of premium pay per day), the total damages alleged through this claim would be $2,878,720.00 (*i.e.*, [$8.00 per hour] X [2 hours of pay per day] X [260 workdays per year] X [4 years] X [assuming 173 class members]).

25.    In her Fifth Cause of Action, Plaintiff alleges that any alleged class members who quit or were discharged by Removing Defendants during the relevant liability period are due a total of thirty (30) days' "wages," under California's so-called "waiting time penalties" statute. (Complaint ¶¶ 41-43.) There were approximately 130 IOs who, for whatever reason, stopped working as IOs during the past four years. (Schuman Decl. ¶ 9.) Assuming an eight hour work day, and that California's current minimum wage rate of $8.00 applied to each such IO, the amount in controversy alleged through this claim, assuming a four year statute of limitations, is approximately $249,600.00 (*i.e.*, [$8.00 per hour] X [8 hours per day] X [30 days] X [assuming 130 separated class members]).

26.    Lastly, for her Sixth Cause of Action, Plaintiff also seeks penalties through California Labor Code § 226 for allegedly failing to provide to Plaintiff and the other alleged class members "itemized statements accurately showing all items required by Labor Code 226, subdivisions (1) through (9)." (Complaint ¶ 46.) This claim is subject to a one-year statute of limitations period and the statutory damages are in an amount not to exceed $4,000 per employee. Cal. Labor Code § 226(e). Thus, the potential amount in controversy for this claim is $692,000.00 (*i.e.*, [$4,000] X [assuming 173 class members]).

27.    Finally, Plaintiff also seeks attorneys' fees and costs of suit for

1    prosecuting this action.  (Complaint ¶¶ 28, 32, 37, 48, 54.)  Such fees, when

2    added to the claimed damages discussed above, further increase the claimed

3    amount in controversy above $5 million.  *See Lowdermilk v. U.S. Bank Nat'l*

4    *Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (considering prayer for attorneys'

5    fees held appropriate in calculating $5 million threshold under the Class

6    Action Fairness Act).   Moreover, as Plaintiff seeks declaratory and

7    injunctive relief, as well as attorneys' fees, these claimed damages are also

8    relevant to the consideration of the amount in controversy.  *See, e.g.,*

9    *Yeroushalmi v. Blockbuster Inc.*, No. 05-2550, 2005 U.S. Dist. LEXIS

10   39331, at *19 (C.D. Cal. July 11, 2005) (stating that "it is proper [under

11   CAFA] to consider the cost of injunctive relief, potential punitive damages,

12   and attorney's fees").

13        28.    In short, the alleged amount in controversy in this action

14   exceeds $5,000,000.00 as required by 28 U.S.C. § 1332(d)(2) and §

15   1332(d)(6).

16

17   **III.   NO CAFA EXCEPTION APPLIES.**

18        29.    CAFA contains certain jurisdictional exceptions, none of which

19   applies to the present case.

20        30.    The "Local Controversy Exception" does not apply to the

21   present case because, at a minimum, in the three years preceding the filing of

22   the Complaint, Defendant SOH was sued in another putative class action

23   "asserting the same or similar factual allegations against" it.  28 U.S.C. §

24   1332(d)(4)(A)(i)(III).  A copy of the complaint against SOH, styled Davis, et

25   al. v. SOH Distribution Company, Inc., Case File No. 1:CV-09-237, in the

26   United States District Court for the Middle District of Pennsylvania, is

27   attached hereto as Exhibit G.

28

DEFENDANTS SOH'S & G&A'S NOTICE OF REMOVAL

31.    The "Home State Exception" also does not apply to the present case because, at a minimum, one of the primary defendants, SOH, is not a citizen of California, the state in which the action was originally filed.  28 U.S.C. § 1332(d)(4)(B).

32.    Accordingly, all of the requirements for federal jurisdiction under 28 U.S.C. § 1332(d) are satisfied, and removal of this action is proper under 28 U.S.C. §§ 1441, 1446, and 1453.

Dated:  June 9, 2009.

O'MELVENY & MYERS LLP
FRAMROZE M. VIRJEE
ADAM J. KARR

By _____
        Adam J. Karr
Attorneys for Defendants,
SOH DISTRIBUTION COMPANY,
INC. and G&A SNACK
DISTRIBUTING, INC.

– and –

Dated:  June 9, 2009.

ECKERT SEAMANS CHERIN &
MELLOTT, LLC
JOEL L. LENNEN

By _____
        Joel L. Lennen
Attorney for Defendants,
SOH DISTRIBUTION COMPANY,
INC. and G&A SNACK
DISTRIBUTING, INC.

NB1:776699.4

11

**Exhibit A**

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
G & A SNACK DISTRIBUTING, INC., a.k.a. G and A SNACK
DISTRIBUTING, INC.; SOH DISTRIBUTION COMPANY, INC.; and
DOES 1 through 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHARLEE HARGIS, individually and on behalf of all others similarly
situated

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY
FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CIVIL COMPLEX CENTER

**May 05 2009**

ALAN CARLSON, Clerk of the Court
by R. Vavra

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court, County of Orange, Civil Complex Center<br>751 West Santa Ana Blvd.<br>Santa Ana, CA 92701 | CASE NUMBER<br>*(Número del Caso)*  30-2009-00266882 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ira Spiro, Spiro Moss LLP                                    telephone 310-235-2468
11377 W. Olympic Blvd. 5th Floor, Los Angeles, CA 90064

**JUDGE NANCY WIEBEN STOCK
DEPT. CX105**

| DATE<br>*(Fecha)* May 5, 2009   ALAN CARLSON | Clerk, by _____ R. VAVRA _____<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* G & A SNACK DISTRIBUTING, INC., a.k.a.
G and A Snack Distributing, INC.

under: ☒ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 5-11-09

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

A-12

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
G & A SNACK DISTRIBUTING, INC., a.k.a. G and A SNACK
DISTRIBUTING, INC.; SOH DISTRIBUTION COMPANY, INC.; and
DOES 1 through 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHARLEE HARGIS, individually and on behalf of all others similarly
situated

---

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY
FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CIVIL COMPLEX CENTER

**May 05 2009**

ALAN CARLSON, Clerk of the Court
by R. Vavra

---

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
    There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
    Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court, County of Orange, Civil Complex Center
751 West Santa Ana Blvd.
Santa Ana, CA 92701

CASE NUMBER
*(Número del Caso)* 30-2009-00266882

JUDGE NANCY WIEBEN STOCK
DEPT. CX105

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ira Spiro, Spiro Moss LLP                                    telephone 310-235-2468
11377 W. Olympic Blvd. 5th Floor, Los Angeles, CA 90064

DATE
*(Fecha)* May 5, 2009    ALAN CARLSON    Clerk, by _____ R. VAVRA _____ , Deputy
                                         *(Secretario)*                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*:  **SOH Distribution Company, INC.**

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☒ by personal delivery on *(date)*:  **5-11-09**

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

A-13

$350.00
$550.00

GIGLIOTTI & GIGLIOTTI, L.L.P.
Joseph J. Gigliotti, SBN 144979
434 East Chapman Ave
Fullerton, California 92832
Tel (714) 879-1712,  Fax (714) 879-3439

Attorneys for Plaintiff

SPIRO MOSS LLP
Ira Spiro, State Bar No. 67641
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
telephone      310-235-2468
fax            310-235-2456
email          ispiro@smbhblaw.com

Attorneys for Plaintiff

**ELECTRONICALLY
FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CIVIL COMPLEX CENTER
**May  05 2009**
ALAN CARLSON, Clerk of the Court
by R. Vavra

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## ORANGE COUNTY

CHARLEE HARGIS, individually, and on behalf of all others similarly situated,

         Plaintiff,

v.

G & A SNACK DISTRIBUTING, INC, a.k.a.
G and A SNACK DISTRIBUTING, INC.;
SOH DISTRIBUTION COMPANY, INC.; and
DOES 1 through 50,

         Defendants.

Case No.  30-2009-00266882

**COMPLAINT**

CLASS ACTION

**JUDGE NANCY WIEBEN STOCK
DEPT. CX105**

**THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO RULE 308 OF THE LOCAL RULES
OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

A.14

## INTRODUCTION AND CERTAIN DEFINITIONS

1.     Now, and for many years, Defendants, very large snack food distribution companies, unlawfully classified as independent contractors their employees who held jobs driving delivery routes. Thus, Defendants evaded and violated California law requiring employers to reimburse employees for expenses, violated California overtime laws, and violated other wage and hour laws, such as failing to provide the employees with required meal periods and rest periods, failing to provide them with required wages statements, and failing to pay them their final wages within the time required by law. This is a class action seeking monetary and injunctive remedies for Defendants' violations.

2.     In this pleading, the term "Class Members" means all persons who, on or after the date that is four years before the initial complaint in this case was filed, have been, are, or will be working on delivery routes in which they deliver snack foods or other items furnished by any of the Defendants.

3.     In this pleading, "Defendants" means "defendants and each of them".

4.     The allegations in this pleading are made without any admission that, as to any particular allegation, plaintiff bears the burden of pleading, proof, or persuasion. All rights to plead in the alternative are reserved.

## PARTIES

5.     Plaintiff Charlee Hargis was, within the statute of limitations periods of all causes of action, a Class Member employed by Defendants in Orange County, California.

6.     Defendant G & A Snack Distributing, Inc. is also known as G and A Snack Distributing, Inc. and is a corporation.

7.     Defendant SOH Distribution Company, Inc. is a corporation.

8.     Plaintiff is informed and believes and thereon alleges that at all times relevant to this action, the named defendants and defendants DOES 1 through 50 were affiliated and were an integrated enterprise.

9.     Plaintiff is unaware of the true names of defendants Does 1 through 50. Said

A-15

1  defendants are sued by said fictitious names, and the pleadings will be amended as necessary to

2  obtain relief against defendants Does 1 through 50 when the true names and capacities are

3  ascertained or when such facts pertaining to liability are ascertained, or as permitted by law or by

4  the Court.

5       10.    Plaintiff is informed and believes and thereon alleges that at all relevant times each

6  defendant, directly or indirectly, or through agents or other persons, employed Plaintiff and the

7  other Class Members, and exercised control over the wages, hours, and working conditions of

8  Plaintiff and the other Class Members. Plaintiff is informed and believes and thereon alleges that,

9  at all relevant times, each defendant was the principal, agent, partner, joint venturer, officer,

10  director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest

11  and/or predecessor in interest of some or all of the other Defendants, and was engaged with some

12  or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to

13  some or all of the other Defendants so as to be liable for their conduct with respect to the matters

14  alleged below. Plaintiff is informed and believes and thereon alleges that each defendant acted

15  pursuant to and within the scope of the relationships alleged above, that each defendant knew or

16  should have known about, and authorized, ratified, adopted, approved, controlled, aided and

17  abetted the conduct of all other Defendants.

18

19  **CLASS ACTION ALLEGATIONS**

20       11.    Plaintiff brings this action on behalf of himself and on behalf of the class of all

21  persons similarly situated, as more fully explained below. This action is brought and may

22  properly be maintained as a class action pursuant Code of Civ. Pro. section 382 and other

23  applicable class action law.

24       12.    The proposed class Plaintiff seeks to represent, sometimes referred to herein as the

25  "Class Members," or the "class," is presently defined in the following CLASS DEFINITION:

26       All persons who, on or after the date that is four years before the initial complaint in this

27       case was filed, have been, are, or will be working on delivery routes in which they deliver

28       snack foods or other items furnished by any of the Defendants.

A. 16

13.     There is a well-defined **community of interest** in the litigation and the proposed class is **easily ascertainable**.

14.     **Numerosity:** The class is so numerous that individual joinder of all members is impracticable. While the exact number of class members is unknown at this time, Plaintiff is informed and believes and thereon alleges that it is several hundred people or more.

15.     **Common Questions Predominate:** Common questions of law and fact exist as to all class members, and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited to:

a)     Were and are the Class Members employees or independent contractors under applicable law?

b)     Whether Defendants have had policies, programs, practices, procedures, protocols, routines, and/or rules whereby they did not reimburse Class Members for necessary expenditures and losses incurred by the Class Members in direct consequence of the discharge of their duties, and thus failed to so reimburse the Class Members.

c)     Whether Defendants have had policies, programs, practices, procedures, protocols, routines, and/or rules whereby they did not reimburse Class Members for necessary expenditures and losses incurred by the Class Members in obedience to the directions of Defendants, and thus failed to so reimburse the Class Members.

d)     Whether Defendants have had policies, programs, practices, procedures, protocols, routines, and/or rules whereby they did not pay overtime wages to the Class Members for hours in excess of 8 in a day, and for hours in excess of 40 in a week, and thus failed to pay such overtime wages.

e)     Whether Defendants failed to have policies, programs, practices, procedures, protocols, routines, and/or rules to provide to the Class Members at least a half hour uninterrupted meal period during their workdays, and thus failed to provide the meal periods.

f)     Whether Defendants failed to have policies, programs, practices, procedures, protocols, routines, and/or rules to provide to the Class Members at least one


A.17

uninterrupted ten minute rest period for each four hours of work, within the
required time during the four hours, and thus failed to provide the rest periods.

g)      Whether Defendants had policies, programs, practices, procedures, protocols,
routines, and/or rules of as a result of which they failed to furnish to the Class
Members, upon each payment of wages, accurate itemized statements required by
California Labor Code section 226.

h)      Whether Defendants failed to have policies, programs, practices, procedures,
protocols, routines, and/or rules whereby they paid to the Class Members all wages
due upon the cessation of their employment within the times required by California
Labor Code sections 201 and 202, and thus failed to pay the final wages within
said times.

i)      Whether Defendants are liable to the Class Members for the amounts provided for
in California Labor Code section 226.7(b) for meal periods not provided.

j)      Whether Defendants are liable to the Class Members for the amounts provided for
in California Labor Code section 226.7(b) for rest periods not provided.

k)      Whether Defendants are liable to the Class Members for the amounts provided for
in California Labor Code section 226(e) for failing to furnish to the class members,
upon each payment of wages, accurate itemized statements required by Labor Code
section 226.

l)      Whether Defendants are liable to the Class Members for the amounts provided for
in California Labor Code section 203 for failure to pay all wages due upon the
cessation of their employment within the times required by California Labor Code
sections 201 and 202.

m)      Whether Defendants, by their policies, programs, practices, procedures, protocols,
routines, and/or rules referred to in this complaint committed unlawful business
practices within the meaning of California Business & Professions Code sections
17200 *et. seq.*

n)      Whether Defendants, by their policies, programs, practices, procedures, protocols,

A.18

1    routines, and/or rules referred to in this complaint committed unfair business

2    practices within the meaning of California Business & Professions Code sections

3    17200 *et. seq.*

4    o)    Whether Defendants, by their policies, programs, practices, procedures, protocols,

5    routines, and/or rules referred to in this complaint committed fraudulent or

6    deceptive business practices within the meaning of California Business &

7    Professions Code sections 17200 *et. seq.*

8    16.    **Typicality**: Plaintiff's claims are typical of the claims of the Class Members.

9    Plaintiff and the other class members sustained losses, injuries and damages arising out of

10   Defendants' common policies, programs, practices, procedures, protocols, routines, and/or rules

11   referred to in this claim for relief, which were applied to the other class members as well as

12   Plaintiff.  Plaintiff seeks recoveries for the same types of losses, injuries, and damages as were

13   suffered by the other class members as well Plaintiff.

14   17.    **Adequacy**: Plaintiff is able fairly and adequately to protect the interests of all

15   members of the class.  The attorneys for Plaintiff and the potential class are qualified and

16   competent and very experienced in wage and hour class action litigation.  Plaintiff is not

17   disqualified by interests antagonistic to the remainder of the class.

18   18.    **Superiority**: A class action is superior to other available means for the fair and

19   efficient adjudication of this controversy.  Individual joinder of all class members is impractical.

20   Class action treatment will permit a large number of similarly situated persons to prosecute their

21   common claims in a single forum simultaneously, efficiently, and without the unnecessary

22   duplication of effort and expense that numerous individual actions engender.  Also, because the

23   losses, injuries and damages suffered by each of the individual class members are small in the

24   sense pertinent to class action analysis, the expenses and burden of individual litigation would

25   make it extremely difficult or impossible for the individual class members to redress the wrongs

26   done to them.  On the other hand, important public interests will be served by addressing the

27   matter as a class action.  The cost to the court system and the public of adjudication of individual

28   litigation and claims would be very substantial, and substantially more than if the claims are

A.19

1  treated as class action. Individual litigation and claims would also present the potential for
2  inconsistent or contradictory results. The issues in this action can be decided by means of
3  common, classwide proof. In addition, if appropriate, the court can, and is empowered to, fashion
4  methods to efficiently manage this action as a class action.

5      19.    **Public Policy Considerations:** Defendants and other employers throughout the
6  state violate wage and hour laws. Their current employees are often afraid to assert their rights
7  out of fear of direct or indirect retaliation. Their former employees are fearful of bringing claims
8  because doing so can harm their employment and future employment and future efforts to secure
9  employment. Class actions provide class members who are not named in the complaint a degree
10 of anonymity that allows for vindication of their rights while eliminating these risks, or at least
11 enormously reducing them.

12

13                          **FIRST CAUSE OF ACTION**

14          **(Against All Defendants for Failure to Reimburse Expenditures,**

15                  **in Violation of Labor Code § 2802)**

16      20.    Paragraphs 1 through 19 above are incorporated here.

17      21.    Throughout the statute of limitations period applicable to this cause of action,
18 plaintiff and the other Class Members incurred necessary expenditures and losses in direct
19 consequence of the discharge of their duties as employees of Defendants.

20      22.    Throughout the statute of limitations period applicable to this cause of action,
21 plaintiff and the other Class Members incurred necessary expenditures and losses in direct
22 consequence of obedience to the directions of their employer(s).

23      23.    Throughout the statute of limitations period applicable to this cause of action,
24 Defendants failed to reimburse the plaintiff and the other Class Members for said expenditures
25 and losses.

26      24.    Defendants are also liable to plaintiff and the Class Members for the civil penalties
27 provided for in Labor Code § 558, because of the violations alleged in this cause of action.

28


A.20

## SECOND CAUSE OF ACTION

**(Against All Defendants for Failure to Pay Wages at Overtime Rates,**

**in Violation of Labor Code § 1194 and IWC Wage Order 1)**

25.    Paragraphs 1 through 19 above are incorporated here.

26.    Throughout the statute of limitations period applicable to this cause of action, Plaintiff and the other Class Members very frequently worked, and continue to work in excess of forty (40) hours per week and in excess of excess of eight (8) hours per day.

27.    Throughout the statute of limitations period applicable to this cause of action, Defendants did not pay, and continue not to pay Plaintiff or the other Class Members at the required overtime rates for the overtime work described in the preceding paragraph, in violation of the California Labor Code and Wage Order 1 of the California Industrial Welfare Commission.

28.    Pursuant to California Labor Code section 1194, Plaintiff and the other Class Members are entitled to recover unpaid overtime compensation plus interest, plus attorneys' fees and costs.

29.    Defendants are also liable to plaintiff and the Class Members for the civil penalties provided for in Labor Code § 558, because of the violations alleged in this cause of action.

## THIRD CAUSE OF ACTION

**(Against All Defendants for Failure to Provide Meal Periods)**

30.    Paragraphs 1 through 19 above are incorporated here.

31.    Throughout the statute of limitations period applicable to this cause of action, Wage Order 1 of the California Industrial Welfare Commission, which has the force of statute, provided, and still provides:

"(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . .

"(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes . . .

A.21

1    "(D) If an employer fails to provide an employee a meal period in accordance with

2    the applicable provisions of this order, the employer shall pay the employee one (1) hour

3    of pay at the employee's regular rate of compensation for each workday that the meal

4    period is not provided. . . .

5    32.    Throughout the statute of limitations period applicable to this cause of action,

6    Defendants routinely failed, and continue to fail to provide the meal periods required by

7    California law.    Therefore Plaintiff and the other Class Members are entitled to be paid as stated

8    in subdivision (D) above, plus interest, attorneys' fees, costs, and other applicable relief.

9    33.    Throughout the statute of limitations period applicable to this cause of action,

10    Defendants failed to provide meal periods required by the Wage Order 1 of the Industrial Welfare

11    Commission.    Therefore Plaintiff and the other Class Members are entitled to be paid as stated in

12    Labor Code section 226.7.

13    34.    Defendants are also liable to plaintiff and the Class Members for the civil penalties

14    provided for in Labor Code § 558, because of the violations alleged in this cause of action.

15

16    **FOURTH CAUSE OF ACTION**

17    **(Against All Defendants for Failure to Provide Rest Periods)**

18    35.    Paragraphs 1 through 19 above are incorporated here.

19    36.    Throughout the statute of limitations period applicable to this cause of action,

20    Wage Order 1 of the California Industrial Welfare Commission, which has the force of statute,

21    provided, and still provides:

22    "(A) Every employer shall authorize and permit all employees to take rest periods,

23    which insofar as practicable shall be in the middle of each work period. The authorized

24    rest period time shall be based on the total hours worked daily at the rate of ten (10)

25    minutes net rest time per four (4) hours or major fraction thereof . . .

26    "(B) If an employer fails to provide an employee a rest period in accordance with

27    the applicable provisions of this order, the employer shall pay the employee one (1) hour

28    of pay at the employee's regular rate of compensation for each workday that the rest period




1    is not provided.

2    37.    Throughout the statute of limitations period applicable to this cause of action,

3    Defendants routinely failed, and continue to provide the rest periods required by California law.

4    Therefore Plaintiff and the other Class Members are entitled to be paid as stated in subdivision

5    (B) above, plus interest, attorneys' fees, costs, and other applicable relief.

6    38.    Throughout the statute of limitations period applicable to this cause of action,

7    Defendants failed to provide rest periods required by Wage Order 1 of the Industrial Welfare

8    Commission. Therefore Plaintiff and the other Class Members are entitled to be paid as stated in

9    Labor Code section 226.7.

10    39.    Defendants are also liable to plaintiff and the Class Members for the civil penalties

11    provided for in Labor Code § 558, because of the violations alleged in this cause of action.

12

13    **FIFTH CAUSE OF ACTION**

14    **(Against All Defendants for Failure to Pay All Wages Upon Ending of Employment)**

15    40.    Paragraphs 1 through 19 above are incorporated here.

16    41.    Plaintiff and many of the other Class Members quit or were discharged from their

17    employment within the statute of limitations period applicable to this cause of action, and others

18    will be.

19    42.    However, Defendants failed, and continue to fail to pay said employees, without

20    abatement, all wages (as defined by applicable California law) within the time required by Labor

21    Code sections 201 and 202. Among other things, these employees were never paid any of the

22    overtime compensation referred to in this complaint, or reimbursement for expenditures, or the

23    other unpaid wages referred to in this complaint. Defendants' failure to pay said wages within the

24    required time was willful within the meaning of Labor Code section 203.

25    43.    Therefore, each of these employees is entitled to one day's wages for each day he

26    or she was not timely paid all said wages due, up to a maximum of 30 days' wages for each

27    employee. Because none of said employees were ever paid the overtime wages to which they

28    were entitled, and were never paid other unpaid wages referred to in this complaint, each of said

10
Complaint

A. 23

1  employees is entitled to 30 days' wages.

2      44.    Defendants are also liable to plaintiff and the Class Members for the civil penalties

3  provided for in Labor Code § 558, because of the violations alleged in this cause of action.

5  ## SIXTH CAUSE OF ACTION

6  **(Against All Defendants, for Failure to Furnish Itemized Statements,**

7  **in Violation of California Labor Code § 226)**

8      45.    Paragraphs 1 through 19 above are incorporated here.

9      46.    Throughout the statute of limitations period applicable to this cause of action,

10  Defendants intentionally failed and continue to fail to furnish to Plaintiff and the other Class

11  Members, upon each payment of wages, itemized statements accurately showing all items

12  required by Labor Code section 226, subdivisions (1) through (9).

13      47.    Plaintiff and the other Class Members were damaged by these failures because,

14  among other things, the failures led them to believe that they were not entitled to be paid

15  overtime, even though they were so entitled, and because the failures hindered them from

16  determining the amounts of regular and overtime wages owed to them.

17      48.    Plaintiff and the other Class Members are entitled to the amounts provided for in

18  Labor Code section 226(e), plus costs and attorneys' fees.

19      49.    Defendants are also liable to plaintiff and the Class Members for the civil penalties

20  provided for in Labor Code § 558, because of the violations alleged in this cause of action.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

---
11
Complaint

A.24

## SEVENTH CAUSE OF ACTION

### (Against All Defendants,

### for Violation of California Business and Professions Code §§17200 *et seq.*)

50.    All paragraphs above are incorporated here.

51.    Defendants' conduct described above constitutes unlawful business acts and practices in violation of Business & Professions Code sections 17200 *et seq.*

52.    Pursuant to Business and Professions Code sections 17200 *et seq.*, for the statute of limitations period covered by this cause of action, Plaintiff and the other Class Members are entitled to restitution for at least the following: restitution for the unpaid overtime earnings and other unpaid earnings withheld and retained by Defendants referred to above, and expenses and losses Defendants failed to reimburse.

53.    Plaintiff and the other Class Members are also entitled to permanent injunctive and declaratory relief prohibiting Defendants from engaging in the violations and other misconduct referred to above.

54.    Defendants are also liable to pay attorneys' fees pursuant to Code of Civil Procedure section 1021.5 and other applicable law, and costs.

## PRAYER

WHEREFORE, Plaintiff prays judgment for plaintiff and all others on whose behalf this suit is brought, against Defendants, jointly and severally, as follows:

A.    For such general, special and liquidated damages as may be appropriate, including all damages alleged above.

B.    For reimbursement of the expenditures and losses referred to above.

C.    For unpaid wages at overtime rates for all overtime work.

D.    For amounts under Labor Code § 203 for all Class Members no longer in Defendants' employ at the time of judgment.

E.    For the amounts provided for in Labor Code § 226.7 and Wage Order 1 of the Industrial Welfare Commission with respect to meal periods and rest periods.





1      F.     For the amounts provided for in Labor Code § 226(b).

2      G.    For restitution as described in the cause of action under Business. & Prof. Code

3 §§17200 *et. seq.* above.

4      H.    For pre-judgement interest.

5      I.     For permanent injunctive and declaratory relief described in the cause of action

6 under Business. & Prof. Code §§17200 *et. seq.* above.

7      J.     For such other relief as the Court deems just and proper.

8 May 5, 2009                    Gigliotti & Gigliotti
9                                  Spiro Moss LLP

10                               Ira Spiro
11                               Attorneys for Plaintiff

12                  **DEMAND FOR JURY TRIAL**

13    Plaintiff demands trial by jury for plaintiff and all the Class Members on issues so triable.

14 May 5, 2009                    Gigliotti & Gigliotti
15                                  Spiro Moss LLP

16                               Ira Spiro
17                               Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

A.26

**Exhibit  B**

1  FRAMROZE VIRJEE (S.B. # 120401)
   fvirjee@omm.com
2  ADAM J. KARR (S.B. # 212288)
   akarr@omm.com
3  O'MELVENY & MYERS LLP
   610 Newport Center Drive, 17th Floor
4  Newport Beach, CA 92660-6429
   Tel: 949-760-9600
5  Fax: 949-823-6994

6  JOEL L. LENNEN
   jlennen@eckertseamans.com
7  ECKERT SEAMANS CHERIN & MELLOTT,
   LLC
8  600 Grant Street, 44th Floor
   Pittsburgh, PA 15219
9  Tel: 412-566-6000
   Fax: 412-566-6099

10

11 Attorneys for Defendants,
   SOH DISTRIBUTION COMPANY, INC. and
   G&A SNACK DISTRIBUTING, INC.

12

13

14        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                    **ORANGE COUNTY**

16

17 CHARLEE HARGIS, individually, and on      Case No. 30-2009-00266882
   behalf of all others similarly situated,

18            Plaintiff,                      **NOTICE OF REMOVAL TO
                                             FEDERAL COURT**
19            vs.

20 G & A SNACK DISTRIBUTING, INC.,
   a.k.a. G and A SNACK DISTRIBUTING,
21 INC.; SOH DISTRIBUTION
   COMPANY, INC.; and DOES 1 through
22 50,

23            Defendants.

24

25

26

27

28                                                    B.27

---

1      **TO THE HONORABLE JUDGES OF THE SUPERIOR COURT OF**

2      **CALIFORNIA FOR THE COUNTY OF ORANGE AND TO PLAINTIFF**

3      **AND PLAINTIFF'S ATTORNEY OF RECORD:**

4

5      PLEASE TAKE NOTICE that on June 9, 2009, Defendants SOH

6  Distribution Company, Inc. and G & A Snack Distributing, Inc. submitted a Notice

7  of Removal in the United States District Court for the Central District of

8  California.  Said Notice is attached hereto as Exhibit A.

9

10      PLEASE TAKE FURTHER NOTICE that, pursuant to 28 U.S.C. § 1446,

11  the filing of the above-referenced Notice of Removal effected the removal of this

12  action to the federal court, and this Court is directed to "proceed no further unless

13  and until the case is remanded."  28 U.S.C. § 1446(d).

14

15  Dated:  June 9, 2009.           O'MELVENY & MYERS LLP

16                         FRAMROZE M. VIRJEE
                             ADAM J. KARR

17

18                         By

19                            Adam J. Karr
                         Attorney for Defendants

20                         SOH DISTRIBUTION COMPANY, INC.
                         and G&A SNACK DISTRIBUTING, INC.

21

22                         – and –

23  Dated:  June 9, 2009.           ECKERT SEAMANS CHERIN & MELLOTT,
                         LLC

24                         JOEL L. LENNEN

25

26                         By      Joel Lennen / AJK
                         Joel L. Lennen

27                         Attorney for Defendants
                         SOH DISTRIBUTION COMPANY, INC.

28  NB1:776814.1                 and G&A SNACK DISTRIBUTING, INC.

                             1               B.28

Exhibit  C

1  FRAMROZE VIRJEE (S.B. # 120401)
   fvirjee@omm.com
2  ADAM J. KARR (S.B. # 212288)
   akarr@omm.com
3  O'MELVENY & MYERS LLP
   610 Newport Center Drive, 17th Floor
4  Newport Beach, CA 92660-6429
   Tel: 949-760-9600
5  Fax: 949-823-6994

6  JOEL L. LENNEN
   jlennen@eckertseamans.com
7  ECKERT SEAMANS CHERIN & MELLOTT,
   LLC
8  600 Grant Street, 44th Floor
   Pittsburgh, PA 15219
9  Tel: 412-566-6000
   Fax: 412-566-6099

10
   Attorneys for Defendants,
11 SOH DISTRIBUTION COMPANY, INC. and
   G&A SNACK DISTRIBUTING, INC.

12

13

14            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                          **ORANGE COUNTY**

16
   CHARLEE HARGIS, individually, and on        Case No. 30-2009-00266882
17 behalf of all others similarly situated,

18                 Plaintiff,                   **NOTICE TO ADVERSE PARTY OF
                                                 REMOVAL TO FEDERAL COURT**
19                 vs.

20 G & A SNACK DISTRIBUTING, INC.,
   a.k.a. G and A SNACK DISTRIBUTING,
21 INC.; SOH DISTRIBUTION
   COMPANY, INC.; and DOES 1 through
22 50,

23                 Defendants.

24

25

26

27

28                                                              C. 29

   ──────────────────────────────────────────────────────────
                   NOTICE OF REMOVAL TO FEDERAL COURT

1    **TO PLAINTIFF CHARLEE HARGIS AND HIS ATTORNEYS OF**

2    **RECORD:**

3         PLEASE TAKE NOTICE that a Notice of Removal of this action was filed

4    in the United States District Court for the Central District of California on June 9,

5    2009.  A copy of the Notice of Removal is attached to this Notice, and is served

6    and filed herewith.

7

8    Dated:  June 9, 2009.                    O'MELVENY & MYERS LLP
                                             FRAMROZE M. VIRJEE
9                                            ADAM J. KARR

10

11                                           By
                                                Adam J. Karr
12                                           Attorney for Defendants
                                             SOH DISTRIBUTION COMPANY, INC.
13                                           and G&A SNACK DISTRIBUTING, INC.

14                                           – and –

15

16   Dated:  June 9, 2009.                    ECKERT SEAMANS CHERIN & MELLOTT,
                                             LLC
                                             JOEL L. LENNEN
17

18

19                                           By   Joel Lennen / ASH
                                                Joel L. Lennen
20                                           Attorney for Defendants
                                             SOH DISTRIBUTION COMPANY, INC.
21                                           and G&A SNACK DISTRIBUTING, INC.

     NB1:776873.1
22

23

24

25

26

27

28                                                                        C. 30

                                        1
     NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

**Exhibit  D**

1   FRAMROZE VIRJEE (S.B. # 120401)
    fvirjee@omm.com
2   ADAM J. KARR (S.B. # 212288)
    akarr@omm.com
3   O'MELVENY & MYERS LLP
    610 Newport Center Drive, 17th Floor
4   Newport Beach, CA 92660-6429
    Tel: 949-760-9600
5   Fax: 949-823-6994

6   JOEL L. LENNEN
    jlennen@eckertseamans.com
7   ECKERT SEAMANS CHERIN & MELLOTT,
    LLC
8   600 Grant Street, 44th Floor
    Pittsburgh, PA 15219
9   Tel: 412-566-6000
    Fax: 412-566-6099
10
    Attorneys for Defendants,
11  SOH DISTRIBUTION COMPANY, INC. and
    G&A SNACK DISTRIBUTING, INC.
12

13

14              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                           **ORANGE COUNTY**

16

| | |
|---|---|
| 17  CHARLEE HARGIS, individually, and on behalf of all others similarly situated, | Case No. 30-2009-00266882 |
| 18                          Plaintiff, | |
| 19                              vs. | **CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** |
| 20  G & A SNACK DISTRIBUTING, INC., a.k.a. G and A SNACK DISTRIBUTING, INC.; SOH DISTRIBUTION COMPANY, INC.; and DOES 1 through 50, | |
| 21 | |
| 22 | |
| 23                          Defendants. | |

24

25

26

27

28
                                                                    D 31

1       I, Linda Evington, declare and state as follows:

2       I am over the age of 18 years and not a party to this action.

3       My business address is 610 Newport Center Drive, Suite 1700, Newport Beach,

4 California 92660-6429, which is in the city, county and state where the mailing described

5 below took place.

6       On June 9, 2009, I deposited in the United States Mail at Newport Beach,

7 California, to the parties listed below, a copy of the Notice of Removal [to Federal Court]

8 dated June 9, 2009, a copy of which is attached to this Certificate (without voluminous

9 exhibits).

10

11   Joseph J. Gigliotti, Esq.       Ira Spiro, Esq.
       ***Gigliotti & Gigliotti, L.L.P***    ***Spiro Moss LLP***

12   434 East Chapman Ave.      11377 W. Olympic Blvd., Fifth Floor
       Fullerton, California 92832     Los Angeles, CA 90064

13

14       I declare under penalty of perjury that the foregoing is true and correct.

15       Executed on June 9, 2009.

16

17

18                     _____

19                         Linda Evington

20  NB1:776817.1

21

22

23

24

25

26

27

28

D.32

Exhibit E

FRAMROZE VIRJEE
fvirjee@omm.com
ADAM J. KARR
akarr@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660-6429
Tel: 949.760.9600
Fax: 949.823.6994

JOEL L. LENNEN
jlennen@eckertseamans.com
ECKERT SEAMANS CHERIN &
MELLOTT, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Tel: 412.566.6000
Fax: 412.566.6099
[Will Apply for *Pro Hac Vice* Admission]

Attorneys for Defendants,
SOH DISTRIBUTION COMPANY, INC.
and G&A SNACK DISTRIBUTING, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLEE HARGIS, individually, and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　　vs.<br><br>G & A SNACK DISTRIBUTING, INC., a.k.a. G and A SNACK DISTRIBUTING, INC.; SOH DISTRIBUTION COMPANY, INC.; and DOES 1 through 50,<br><br>　　　　　　Defendants. | Case No. _____<br><br>**DECLARATION OF DEBORAH SCHUMAN IN SUPPORT OF NOTICE OF REMOVAL** |

I, Deborah Schuman, an adult resident of Pennsylvania, declare and state under penalty of perjury as follows:

1.    I make this Declaration in support of SOH Distribution

ε. 33

Company, Inc.'s ("SOH") and G&A Snack Distributing Company, Inc.'s

("G&A") Notice of Removal in the above-captioned matter.

2.     I make this Declaration based upon my review and knowledge

of various business records and personal knowledge, and if called to testify, I

could and would competently testify as set forth herein.

3.     I have been employed by SOH and/or related entities for twenty-

three (23) years.  I am currently the Sales Accounting Manager for SOH and

have served in this capacity for approximately fifteen (15) years.

4.     Also, I am the Sales Accounting Manager for G&A.

5.     Through my various duties, I have personal knowledge

regarding SOH's and G&A's operations and distribution systems, the

independent operators who have contracted with SOH or G&A in the State of

California and various business records of SOH and G&A.

6.     SOH is a Delaware corporation with its principal place of

business located at 1250 York Street, Hanover, Pennsylvania 17331.

7.     SOH and G&A are both snack food distributors authorized to

distribute Snyder's of Hanover, Inc.'s brands and various other brands of

snack food products.

8.     In order to assist in the distribution of such products, SOH and

G&A enter into agreements with various independent businesspeople and

companies operating distribution businesses.  These agreements are

2

DECLARATION IN SUPPORT OF PETITION FOR REMOVAL

E.34

memorialized in individual written distributor agreements.

9.    At the time of the filing of the Complaint in the above-captioned action on May 5, 2009, there were approximately 85 independent operators, some operating multiple routes, with distributor agreements with SOH in California and approximately 88 independent operators, some operating multiple routes, with distributor agreements with G&A in California. Throughout the four-year period preceding the filing of the Complaint, there have been, on the average, at any one time, approximately 173 total independent operators with distributor agreements with SOH and G&A in California. Also, over the four years preceding the filing of the Complaint, approximately 161 total independent operators, some operating multiple routes, have acted as independent operators for SOH in California and 142 total independent operators, some operating multiple routes, have acted as independent operators for G&A in California. Finally, during the four years preceding the filing of the Complaint, the distributor agreements for approximately 130 independent operators terminated.

10.    G&A entered into a Distributor Agreement with plaintiff, Charlee Hargis, on or about July 13, 2007, a copy of which Agreement is attached hereto as Exhibit "A."

11.    As set forth in the Distributor Agreement and as otherwise indicated by G&A's records, Ms. Hargis' last known address is 8062 East

3

E.35

1  Loftwood Lane, Orange, California 92867.

2         I declare under penalty of perjury under the laws of the United States

3

4  that the foregoing is true and correct.

5         Executed this _5th_ day of June, 2009, at Hanover, Pennsylvania.

6

7

8                                    Deborah Schuman

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION IN SUPPORT OF PETITION FOR REMOVAL

# EXHIBIT "A"

E.37

## DISTRIBUTOR AGREEMENT

This Distributor Agreement (this "Agreement") is made as of this _13_ day of _July_ 2000_8_ in Santa Fe Springs, California, 90670, between G&A Snack Distributing, Inc., a California corporation with its offices and principal place of business located at 11630 Pike Street, Santa Fe Springs, CA 90670 (hereinafter called "G&A"), and _____ *Charlee Harois* _____ of

(First, Middle, Last Name)

_80162 E. Loftward Un. Orange, CA 92867_ (hereinafter referred

(Complete Street Address)

to as "Distributor").

### WITNESSETH:

WHEREAS, G&A is a snack food distributor authorized to distribute the Snyder's of Hanover ("Snyder's") brand and various other brands of snack food products throughout an area which includes the territory hereinafter set forth; and

WHEREAS, G&A and Snyder's, over the years, have developed a reputation for quality and value which has created a strong consumer recognition and approval and continuing consumer demand for the Snyder's and other's products; and

WHEREAS, Distributor is an independent businessman operating a distribution business, with the facilities, knowledge and ability necessary for successful distribution; and

WHEREAS, Distributor desires to purchase products from G&A for distribution within a territory, as hereinafter defined, subject to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein and for other good and valuable consideration, the receipt of sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties mutually agree as follows:

1.    **Definitions**

    (a)    Product(s) – shall mean those pretzel, potato chip, corn chip, popcorn and other snack food items which are specifically identified, from time to time, on the Price List, which shall include, but are not limited to, items sold under the names and/or trademarks of Snyder's. Products shall not include vend or bulk sized products, private label products, products intended for distribution or sell as frozen products, products intended for distribution or sale to specialty outlets, specialty or seasonal products or stale or out-of-code products. From time to time, a Product may be removed from the Price List by G&A, may be changed as far as ingredients, packaging or other features, may ceased to be supplied or distributed by G&A or may have its price changed on the Price List.

    (b)    Price List – shall mean the document published by G&A, from time to time, entitled "Contract Sales Retail Price List." The document will identify all Products that G&A has available, from time to time, for purchase by Distributor and the price for each Product. The Distributor hereby agrees and understands that the Price List may be changed, from time to time, by G&A upon fifteen (15) days' notice to Distributor.

E.38

(c)    Territory – shall mean the geographic area for which Distributor is granted the right to sell and distribute Products. The Territory is more specifically described on Schedule A attached hereto and made part hereof.

(d)    Distributor – shall mean the individual or entity referred to in the introductory paragraph of this Agreement.

**2.    Independent Contractor**

(a)    Through this Agreement, the parties intend to create an independent contractor relationship between them and agree that Distributor is a self-employed, independent contractor for all purposes. Nothing herein shall be construed: (i) to be inconsistent with that relationship; (ii) as constituting Distributor as the partner, agent, or employee of G&A; or (iii) as authorizing Distributor, or any agent or employee of Distributor, to create or assume any obligation or liability in the name of or on behalf of G&A. Any contrary final determination by any administrative agency or court of competent jurisdiction shall entitle either party to declare this Agreement null and void.

(b)    G&A is interested only in the results obtained under this Agreement. The manner and means by which Distributor achieves these results shall be determined by Distributor.

(c)    Distributor shall hold itself out as a self-employed, independent contractor and shall not be treated as an agent or employee of G&A for any federal, state or local tax, social security, workers' compensation, or unemployment compensation purposes or for any other purpose whatsoever. Distributor shall comply with all laws applicable to Distributor's business, shall obtain all appropriate licenses for its business, and shall pay all business, self-employment and other taxes and fees applicable to Distributor and its business.

(d)    Nothing in this Agreement shall prevent Distributor from engaging in any other business or profession except as herein limited.

**3.    Distribution Rights**

Subject to the terms of this Agreement, G&A hereby grants to Distributor the right to sell and distribute Products in the Territory.

**4.    Changes in/Maintenance of Territory**

(a)    G&A may, at any time, add sales area or accounts to the Territory, remove sales area or accounts from the Territory, or both.

(b)    If Distributor fails for any reason to provide and maintain satisfactory sales and service to any sales area or to any account in the Territory, and if such failure is not cured within ten (10) days after receipt of written notice from G&A of the failure, then G&A shall have the option to remove that sales area or account from the Territory without regard to the limitations provided for in paragraph 4(b). In such event, the Territory shall be changed to reflect that removal, and Distributor shall not be entitled to receive any Product cost reduction from G&A.

E, 39

5. **Purchase of Products**

    (a)    Distributor may submit orders for Products as determined by Distributor in accordance with G&A applicable procedures, and upon G&A acceptance of an order, G&A will use its best efforts to fill that order in accordance with G&A applicable procedures. Distributor shall pick up its order from the G&A Distribution Center, which location may be changed from time to time as G&A shall determine. Notwithstanding the foregoing, G&A may make reasonable reductions in Product quantities ordered by Distributor in the event of production difficulties, Product shortages, or for other good cause. The Products will be sold to Distributor by G&A on the terms and at the prices established by G&A from time to time and set forth on the Price List.

    (b)    All Products will be sold to Distributor absolutely and the title and risk of loss will pass to Distributor upon delivery of the Products to Distributor.

6. **Facilities**

    (a)    Distributor shall be responsible for providing and maintaining, at its own cost, such facilities and equipment as may be needed for the efficient operation of Distributor's business, including, for example, sales vehicles.

    (b)    Distributor is required to electronically transmit its purchase and sales transactions to G&A's IS Department in Hanover, Pennsylvania in the specific file format required by G&A. In addition, Distributor may be required to electronically transmit its sales transactions to certain customers in the DEX format required by that customer. In order to comply with this requirement, Distributor may acquire its own computer system or Distributor may utilize G&A's hand-held computer system pursuant to the terms and conditions established by G&A.

7. **Best Efforts**

Distributor shall exert its best efforts: (i) to develop the full sales potential of the Territory; (ii) to provide service to Distributor's customers on a basis consistent with good industry practice; (iii) to sell and promote the Products; and (iv) to maintain the established reputation and goodwill of the Products in the marketplace.

8. **Credit Risk**

Distributor shall exercise its own judgment in making sales to and extending credit to its customers. Distributor shall be responsible for all credit risks involved in such sales.

9. **Payment for Products**

    (a)    Distributor shall pay G&A for all Products received each week, per the prices and terms on the current Price List, by Friday of the next week.

    (b)    If Distributor requests central billing for a customer of Distributor or if a customer of Distributor requires central billing, G&A may provide central billing for that customer if G&A determines that the customer meets the requirements established by G&A. If G&A provides central billing for such a customer, G&A will credit Distributor's account for the amount of sales invoices which reflect sales made in accordance with such customer's requirements. Distributor shall mail sales invoices to G&A as required by G&A. G&A may at any time cease providing central billing for a customer of Distributor upon written notice to Distributor. Nothing in this

G. 40

paragraph 9 shall relieve Distributor of the obligation set forth in paragraph 12 regarding removal of Products from Distributor's customers in accordance with the coded dates on those Products.

(c)    All payments to G&A shall be by check or by electronic transfer (including pre-authorized debits). If Distributor fails to make timely payment in full of any amount owed to G&A or is otherwise in breach of this Agreement, G&A will not be required to supply Products to Distributor until Distributor has paid that amount or cured the breach.

(d)    To secure the payment of any indebtedness or liability of Distributor to G&A now or hereinafter arising, Distributor hereby grants and conveys to G&A a security interest in this Agreement, in all Products in Distributor's possession, in all of Distributor's accounts receivables, in all equipment and supplies in Distributor's possession and in all proceeds of the above and grants to G&A the right of a secured party under the Uniform Commercial Code. Distributor agrees to execute and deliver to G&A, from time to time at G&A's request, all documents, including financial statements, which G&A may deem necessary or proper to perfect as a first lien or encumbrance and otherwise protect the security interest created hereby including the subordination of all other liens and/or encumbrances to the security interest created herein.

## 10.    Return of Product

Distributor shall not be entitled to return to G&A any Products:  (i) which Distributor is unable to sell; (ii) which Distributor removes from its customers in accordance with the coded dates on those Products; or (iii) which become damaged, due to any cause, after receipt by Distributor.  Subject to the provisions of paragraph 19, Distributor shall be entitled to return to G&A only those Products which are damaged before receipt by Distributor, or which, because of improper manufacture, deteriorate in quality and thereby become unfit for sale prior to the coded dates on those Products.

## 11.    Unsatisfactory Sales or Service

If Distributor fails for any reason to provide and maintain satisfactory sales and service with respect to any Product and if such failure is not cured within ten (10) days after receipt of written notice from G&A of the failure, then G&A shall have the option to:  (A) terminate Distributor's right to distribute said Product, without any obligation of any kind to Distributor, and G&A may thereafter make other arrangements for distribution of said Product in the Territory as G&A deems appropriate; or (B) terminate this Agreement as provided in paragraph 15.

## 12.    Sanitation and Product Freshness

(a)    Distributor shall comply with the sanitation requirements of all federal, state, and local laws and regulations relating to the operation of Distributor's business. If Distributor fails to comply with any of the foregoing sanitation requirements, G&A may suspend deliveries of Products to Distributor until Distributor is in full compliance with those sanitation requirements.

(b)    It is specifically understood by Distributor that the Products are perishable in nature and are marketable only for a limited period of time as specified by the coded dates on the Products. Distributor agrees that certain freshness standards must be met in order to ensure that no deterioration in the quality of the Products occurs.  Accordingly, Distributor agrees to remove Products from Distributor's customers in accordance with the coded dates on those Products.

E. 41

13. **Advertising on Vehicles**

Distributor hereby agrees to permit G&A to use Distributor's sales vehicles for advertising the tradenames and trademarks of the Products. In consideration therefor, G&A will apply decals and trademarks to the sales vehicles. If G&A elects to cease using the advertising space, if Distributor ceases to use the vehicle in operations pursuant to this Agreement, or if this Agreement terminates, Distributor hereby agrees to remove all such decals and trademarks from the vehicle.

14. **Trade Designations**

Distributor acknowledges that G&A, Snyder's and the manufacturers of the other products distributed by G&A are and shall remain the exclusive owners of the various trademarks, trade names, service marks and package designs (hereafter called "Trade Designations") which G&A, Snyder's or the other manufacturers use in connection with the Products. G&A hereby provides Distributor with the nonexclusive license to use the Trade Designations during the term of this Agreement but only in the manner expressly approved in writing by G&A. Distributor shall sell Products only in the retail packages supplied by G&A. Distributor shall immediately discontinue all use of the Trade Designations upon the termination of this Agreement or the written direction of G&A. Any and all goodwill now or hereafter associated with the Trade Designations shall inure exclusively to the benefit of G&A and shall be the property of G&A.

15. **Termination**

(a)    G&A may terminate this Agreement for a breach of this Agreement by Distributor or for other just cause, including, but not limited to, reasons related to the business and/or operations of G&A, by giving Distributor thirty (30) days' written notice of the breach or other just cause, except that only ten (10) days' written notice need be given for a breach of paragraphs 9 or 11. Notwithstanding the foregoing, Distributor may avoid termination under this paragraph 15(a) by curing the breach or other just cause, where possible, within the applicable 30-day notice period or 10-day notice period. If Distributor fails to so cure the breach or other just cause within the applicable 30-day notice period or 10-day notice period, this Agreement shall terminate immediately and without further notice to Distributor.

(b)    Notwithstanding paragraph 15(a), G&A may terminate this Agreement immediately upon written notice to Distributor and Distributor shall have no right to cure, at any time, after the occurrence of any of the following:

(i)      the insolvency of Distributor or the institution of insolvency, bankruptcy or similar proceedings by or against Distributor;

(ii)     any dishonesty, fraudulent conduct or misrepresentation in any of Distributor's dealings with G&A or with retailers, consumers, or others concerning the Products;

(iii)    the performance by Distributor of this Agreement or of any Distributor's duties and responsibilities hereunder while under the influence of alcohol or illegal drugs;

(iv)    Distributor's involvement in any activity which is unsafe or is a health hazard to the public;

(v)    the conviction of Distributor of any offense which is punishable by imprisonment or which is a felony;

(vi)    any actions by Distributor which cause, or in the reasonable belief of G&A are likely to cause: (A) substantial harm to G&A business, goodwill or reputation in the Territory or elsewhere; or (B) substantial harm to Distributor's business, goodwill or reputation; or (C) substantial harm to another G&A distributor's business, goodwill or reputation;

(vii)    the cessation of operation of Distributor's business for a period of seven (7) or more consecutive days;

(viii)    the death of Distributor; or

(ix)    repeated breaches of this Agreement or other instances of just cause, regardless of whether those breaches or instances are cured by Distributor after notice and regardless of whether those breaches or instances are similar in nature. Accordingly, the parties agree that G&A shall not be obligated to afford Distributor the right to cure its breach on more than three (3) occasions during any consecutive twelve (12) month period and that upon any subsequent breach, G&A may terminate this Agreement.

(c)    Notwithstanding paragraphs 15(a) and (b), G&A may terminate this Agreement for any reason whatsoever upon sixty (60) days' written notice to Distributor.

(d)    Distributor may terminate this Agreement by giving G&A thirty (30) days written notice.

## 16.   Obligations Upon Termination

(a)    If Distributor terminates this Agreement, Distributor shall be obligated to continue operations pursuant to this Agreement for the notice period required by paragraph 15(d).

(b)    If this Agreement is terminated by either Distributor or G&A: (i) Distributor shall continue to be responsible for Products which Distributor sold to its customers; and (ii) Distributor shall return to G&A any property which belongs to G&A within five (5) days after the termination of this Agreement.

(c)    Termination of this Agreement by either Distributor or G&A shall not relieve either party of any obligation arising out of operations conducted pursuant to this Agreement prior to such termination.

## 17.   Insurance

Distributor shall obtain and keep in full force and effect during the term of this Agreement, at Distributor's expense, the insurance described herein covering Distributor's business and naming G&A as additional insured, and provide G&A with a certificate of such insurance and all renewals thereof. The insurance obtained by Distributor shall be comprehensive, general liability insurance including automobile, personal injury, and bodily injury insurance with minimum policy limits of $2 million in the aggregate and $1 million per occurrence and property damage insurance with policy limits in the minimum amount of $1 million per occurrence. The automobile insurance acquired by Distributor shall provide coverage on any vehicle, which Distributor might use in operations conducted pursuant to this

Agreement, regardless of whether Distributor owns, borrows or rents such vehicle. Each policy shall provide that it will not be cancelled or materially altered without the insurance company giving G&A at least ten (10) days' prior written notice before such cancellation or alteration shall become effective.

18.  **Limited Warranty**

G&A warrants the Products sold by it to Distributor pursuant to this Agreement are as described on the packages containing such Products. G&A MAKES NO REPRESENTATION OR WARRANTY OF ANY OTHER KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCTS, WHETHER AS TO MERCHANTIBLITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER MATTER, ANY SUCH WARRANTIES BEING HEREBY EXPRESSLY EXCLUDED AND WAIVED. G&A DOES NOT AUTHORIZE ANYONE TO MAKE, NOR DOES IT MAKE, ANY OTHER WARRANTY EXCEPT AS STATED HEREIN.

19.  **Indemnification**

Distributor assumes all risk and liabilities for, and agrees to protect, defend, indemnify and hold G&A, Snyder's and their respective officers, directors, employees, agents, affiliates, divisions, successors, predecessors, representatives and assigns harmless from and against, any and all fines, claims, costs, expenses (including attorney's fees and court costs), demands, damages, actions, causes of action and other liabilities of every kind and nature, whether in contract, tort, equity or otherwise, whether statutory or common law, arising or resulting directly or indirectly from Distributor's actions, omissions or negligence, the performance of this Agreement by Distributor and/or any of Distributor's duties or obligations hereunder, any breach of this Agreement by Distributor, the operation of Distributor's business and/or the use or operation of Distributor's vehicles. Distributor shall notify G&A, in writing, of any such matter as soon as Distributor becomes aware thereof. Unless otherwise required by any applicable insurance contract, G&A shall have the exclusive right to control and direct the legal activities associated with any such action through counsel retained by it, but at Distributor's sole cost and expense.

20.  **Assignment of Agreement**

(a)     Neither this Agreement nor any rights or interests hereunder may be sold, transferred or assigned by Distributor without the prior written consent of G&A. Any purported sale, transfer or assignment thereof by Distributor without such consent shall be null and void.

(b)     G&A may sell, transfer or assign this Agreement or any of G&A rights or interests hereunder upon thirty (30) days' written notice to Distributor. Distributor hereby consents to such assignment, agrees that such assignment shall fully and completely release G&A from any and all liability, claims or expenses hereunder and agrees, if requested to do so, to surrender this Agreement in exchange for a new agreement between Distributor and the assignee which will reflect the assignment by G&A.

21.  **Product Recall**

Distributor shall cooperate fully and promptly with G&A, the federal Food and Drug Administration and any other governmental authority in carrying out such actions as may be requested by G&A, the federal Food and Drug Administration or such other governmental authority in connection with a Product recall, market withdrawal, Product recovery or return, or similar activity.

22.   **Prior Agreements Terminated**

This Agreement terminates, supersedes and cancels all prior and existing written and/or oral contracts, agreements and/or assignments, if any, between Distributor and G&A, Snyder's, their respective officers, directors, employees, agents, affiliates, divisions, successors, predecessors, representatives and assigns and/or any prior, former and/or current manufacturer, distributor or supplier of the Products, relating to the subject matter of this Agreement and/or the distribution or sale of the Products.

23.   **Release**

Upon the execution of this Agreement and in consideration of the execution thereof by G&A, Distributor on behalf of itself and for its officers, directors, employees, agents, affiliates, partners, representatives, heirs, estates, successors and assigns, hereby releases, remises and forever discharges G&A, Snyder's, their respective officers, directors, employees, agents, affiliates, divisions, successors, predecessors, representatives and assigns and all prior, former and current manufacturers, distributors and suppliers of the Products (collectively the "Released Parties") from any and all claims, demands, causes of action, liabilities, costs and expenses, including, but not limited to, attorneys' fees, whether in contract, tort, equity or otherwise, whether statutory or common law, whether known or unknown, of any kind or nature whatsoever, which Distributor ever had, now has or can, shall or may have against the Released Parties, including, but not limited to, any claims, demands, causes of action, liabilities, costs and/or expenses arising out of or relating to any and/or all prior agreements, contracts and/or assignments, if any, between the Distributor and any of the Released Parties, and/or the distribution and/or sale of the Products and/or any other snack food products at any time prior to the date of this Agreement. Distributor represents and warrants that it has not assigned to any other person or entity any and/or all portions of any such claim, demand, cause of action, liability, cost and/or expense which it had, has or can, shall or may have against the Released Parties.

24.   **Waiver**

The failure in any one or more instances of a party to insist upon strict performance of any provision of this Agreement or to exercise any right conferred in this Agreement shall not be construed as a waiver of such provision or right, and the waiver by either party of a breach of any provision of this Agreement shall not be construed as a waiver of a subsequent breach of that provision. No waiver, except a waiver expressly set forth in this Agreement, shall be effective unless it is in writing and signed by an authorized representative of the waiving party.

25.   **Notices**

Any notice required or permitted under this Agreement shall be in writing and shall be deemed properly given when personally delivered, twenty-four (24) hours after deposit with a national express delivery service for next day delivery, or seventy-two (72) hours after deposit in the mail, return receipt requested, first class postage pre-paid, addressed to the party to be notified at the address above stated in this Agreement or at such other address as either party may designate by written notice.

26.   **Miscellaneous**

(a)   <u>Survival</u>. This Agreement shall be binding upon the parties hereto and their respective officers, directors, employees, agents, partners, heirs, estates, representatives, successors and permitted assigns.

(b)    Severability. Any provision of this Agreement which is prohibited by, or unlawful or unenforceable under, any applicable law of any jurisdiction will be ineffective as to such jurisdiction without affecting any other provision of this Agreement. To the full extent, however, that the provisions of such applicable law may be waived, they are hereby waived, to the end that this Agreement be deemed to be a valid and binding Agreement enforceable in accordance with its terms.

Also, if any provision of this Agreement is found by a court of competent jurisdiction to be invalid or unenforceable: (i) the validity and enforceability of the remainder of this Agreement shall not be affected; (ii) such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law; and (iii) such provision shall be valid, enforceable and enforced in its modified form.

(c)    Choice of Forum. THE PARTIES AGREE THAT TO THE EXTENT ANY DISPUTES ARISE THAT CANNOT BE RESOLVED DIRECTLY BETWEEN THEM, DISTRIBUTOR SHALL FILE ANY SUIT AGAINST G&A ONLY IN THE FEDERAL OR STATE COURT HAVING JURISDICTION OVER WHERE G&A'S PRINCIPAL OFFICE IS THEN LOCATED. THE PARTIES FURTHER AGREE THAT G&A MAY, AT ITS OPTION, FILE SUIT IN EITHER THE FEDERAL OR STATE COURT HAVING JURISDICTION OVER WHERE G&A'S PRINCIPAL OFFICE IS LOCATED OR IN THE FEDERAL OR STATE COURT HAVING JURISDICTION OVER WHERE DISTRIBUTOR RESIDES OR DOES BUSINESS OR WHERE THE CLAIM AROSE. DISTRIBUTOR IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT AND WAIVES ANY OBJECTION IT MAY HAVE TO EITHER THE JURISDICTION OR VENUE OF ANY SUCH COURT.

(d)    Waiver of Jury Trial. THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON THIS AGREEMENT OR ARISING OUT OF THIS AGREEMENT OR ANY ACTS, OMISSIONS, TRANSACTIONS OR COURSE OF DEALING HEREUNDER.

(e)    Limitation of Claims. EXCEPT FOR CLAIMS BROUGHT BY G&A WITH REGARD TO DISTRIBUTOR'S OBLIGATION TO MAKE PAYMENT TO G&A PURSUANT TO THIS AGREEMENT, OR DISTRIBUTOR'S OBLIGATIONS TO INDEMNIFY, HOLD HARMLESS AND/OR RELEASE G&A PURSUANT TO THIS AGREEMENT, ANY AND ALL OTHER CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN G&A AND DISTRIBUTOR PURSUANT TO THIS AGREEMENT SHALL BE BARRED UNLESS AN ACTION IS COMMENCED WITHIN: (i) ONE YEAR FROM THE DATE ON WHICH THE ACT OR EVENT GIVING RISE TO THE CLAIM OCCURRED OR (ii) SIX MONTHS FROM THE DATE ON WHICH THE PARTY RAISING THE CLAIM KNEW OR SHOULD HAVE KNOWN, IN THE EXERCISE OF REASONABLE DILIGENCE, OF THE FACTS GIVING RISE TO SUCH CLAIM, WHICHEVER FIRST OCCURS.

(f)    Further Limitation of Product Claims. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, ALL CLAIMS BY DISTRIBUTOR RELATING TO THE PRODUCTS MUST BE MADE, IN WRITING, WITHIN TEN (10) DAYS AFTER DISTRIBUTOR LEARNS THE FACTS UPON WHICH SUCH CLAIMS ARE BASED BUT IN NO EVENT LATER THAN NINETY (90) DAYS AFTER RECEIPT OF SUCH PRODUCT BY DISTRIBUTOR. ALL SUCH CLAIMS NOT MADE IN WRITING WITHIN THE TIME PERIOD SPECIFIED SHALL BE DEEMED WAIVED. FURTHERMORE, DISTRIBUTOR'S EXCLUSIVE REMEDY FOR ALL PRODUCT CLAIMS ARISING OUT OF

THIS AGREEMENT OR OTHERWISE SHALL BE THE REPLACEMENT OF THE PRODUCTS BY G&A, OR, AT THE OPTION OF G&A, RETURN OF THE PURCHASE PRICE.

(g)     <u>Limitation on Damages</u>.   NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, IN NO EVENT SHALL G&A BE LIABLE TO THE DISTRIBUTOR FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST GOODWILL, LOST PROFITS, PROSPECTIVE PROFITS, ANTICIPATED SALES, PUNITIVE DAMAGES AND/OR EXPENDITURES, INVESTMENTS, COSTS AND/OR COMMITMENTS MADE OR INCURRED BY DISTRIBUTOR IN CONNECTION WITH THE BUSINESS OF DISTRIBUTOR, THE DISTRIBUTION OF THE PRODUCTS OR OTHERWISE.

(h)     <u>Loss of Territory/Account</u>.  Distributor agrees not to assert any claim against G&A, any account, or any other person relating to the loss of any sales area, account or the Territory or to the manner of or change to the distribution of Products.

(i)     <u>Captions</u>.  Articles and other captions contained in this Agreement are for reference purposes only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of any part of this Agreement.

(j)     <u>Number and Gender</u>.  Where the context so indicates, the masculine shall include the feminine and neuter, the singular shall include the plural and "person" shall include a corporation and other entities.

(k)     <u>Governing Law</u>.  The validity, interpretation and performance of this Agreement shall be controlled by and construed in accordance with the laws of the State of California, without giving effect to its conflict of laws or choice of law provisions.

(l)     <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter thereof and shall not be modified except by a written document executed by Distributor and by an authorized officer of G&A.

## 27.    DISTRIBUTOR'S ACKNOWLEDGEMENTS/REPRESENTATIONS

Distributor understands and acknowledges that there are significant risks in any business venture and that the primary factor in Distributor's success or failure will be Distributor's own efforts.  In addition, Distributor acknowledges that G&A and its representatives have made no representation, warranty or guaranty regarding the sales volume or profit which Distributor may derive from this Agreement or in its business operations conducted thereunder and have made no representation, warranty or guaranty to Distributor other than the matters set forth in this Agreement and that Distributor has undertaken this venture solely in reliance upon Distributor's own independent investigation of the merits of this venture.

Distributor understands and acknowledges that, as a distributor under this Agreement, it is an independent contractor and not an employee of G&A.  As such, it will not receive any benefits of the type typically provided to an employee such as worker's compensation benefits, health and welfare insurance benefits, Social Security benefits or unemployment benefits.  Instead, Distributor understands and acknowledges that, to the extent desired, it will have to obtain and pay for its own health and welfare benefits and also be required to pay self-employment taxes.

ε. 47

Distributor understands and acknowledges that this Agreement is not a franchise agreement. This Agreement does not provide Distributor with a franchise to distribute Products under a marketing plan or system prescribed by G&A or otherwise. The Agreement does not allow the Distributor to conduct its business under, or in any way use, G&A's name or the tradenames or trademarks of any of the Products, except as otherwise herein provided.

Distributor also understands and acknowledges that other distributors of G&A may be granted distributor agreements at different times and in different situations and that the provisions of such agreements may vary substantially from those contained in this Agreement. Distributor's obligations hereunder may differ substantially from those of other distributors.

Distributor understands and acknowledges that G&A may, in its sole discretion, vary the standards, guidelines and operating practices and requirements among distributors including, without limitation, those relating to the Territory and the Products. Distributor understands and acknowledges that such variations may lead to different costs and obligations among distributors.

Distributor further acknowledges and represents that each of the following statements are true and correct:

(a)    It is executing this Agreement voluntarily, and has read and understands each of its provisions; and

(b)    It has been advised to consult an attorney or certified public accountant of its choice before executing the Agreement to, among other things, review the legal and accounting requirements of being an independent businessman and to determine its reporting obligations.

**IN WITNESS WHEREOF,** G&A and Distributor have executed this Agreement as of the day and year first written above.

WITNESS:                                              G&A Snack Distributing, Inc.


_____                      _____
                                                      By:  Charles E. Good


WITNESS:                                              Distributor:


_____                      _____
                                                      Signature

                                                      _____
                                                      Print Name


Service/G&A                                                                    07/2007

G.48

Exhibit F

1   FRAMROZE VIRJEE
    fvirjee@omm.com
2   ADAM J. KARR
    akarr@omm.com
3   O'MELVENY & MYERS LLP
    610 Newport Center Drive, 17th Floor
4   Newport Beach, CA 92660-6429
    Tel: 949.760.9600
5   Fax: 949.823.6994

6   JOEL L. LENNEN
    jlennen@eckertseamans.com
7   ECKERT SEAMANS CHERIN &
    MELLOTT, LLC
8   600 Grant Street, 44th Floor
    Pittsburgh, PA 15219
9   Tel: 412.566.6000
    Fax: 412.566.6099
10  [Will Apply for *Pro Hac Vice* Admission]

11  Attorneys for Defendants,
    SOH DISTRIBUTION COMPANY, INC. and
12  G&A SNACK DISTRIBUTING, INC.

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16
    CHARLEE HARGIS, individually, and       Case No. _____
17  on behalf of all others similarly
    situated,
18                                          **DECLARATION OF RANDY**
                    Plaintiff,              **SEIBERT IN SUPPORT OF**
19                                          **NOTICE OF REMOVAL**
                    vs.
20
    G & A SNACK DISTRIBUTING,
21  INC., a.k.a. G and A SNACK
    DISTRIBUTING, INC.; SOH
22  DISTRIBUTION COMPANY, INC.;
    and DOES 1 through 50,
23
                    Defendants.
24

25
        I, Randy Seibert, an adult resident of Pennsylvania, declare and state
26
    under penalty of perjury as follows:
27
        1.    I make this Declaration in support of SOH Distribution
28

F.49

Company, Inc.'s ("SOH") and G&A Snack Distributing, Inc.'s ("G&A")

Notice of Removal in the above-captioned matter.

2.    I make this Declaration based upon my review and knowledge

of various business records and personal knowledge, and if called to testify, I

could and would competently testify as forth herein.

3.    I have been employed by SOH and/or related entities for twenty-

six (26) years.  I am currently the Financial Analyst for Western Region for

SOH and have served in this capacity for approximately two (2) years.

4.    Also, I am the Financial Analyst for Western Region for G&A.

5.    SOH and G&A are both snack food distributors authorized to

distribute Snyder's of Hanover, Inc.'s brands and various other brands of

snack food products.

6.    Through my various duties, I have personal knowledge

regarding SOH's and G&A's operations and distribution systems, the

operations of certain independent operators who contract with SOH or G&A

to distribute snack foods products and various business records of SOH and

G&A.

7.    In conducting their distribution businesses, the independent

operators utilize various equipment and distribution vehicles to distribute

products.

8.    Among other things, the independent operators use handheld,

2

F.50

electronic devices to record the purchase and sale of products.  Based upon currently available business records, over the last four years, I currently understand and believe that the independent operators in California have expended approximately $882,390.00 for the rental of the handheld, electronic devices.

9.     Also, in order to distribute the various products, the independent operators in California, and elsewhere, primarily utilize trucks to distribute products.  Based upon information and belief, an independent operator may incur truck licensing fees in California of approximately $300 per year.

10.     Additionally, based upon information and belief, on the average, over a four-year period, an independent operator may incur approximately $12,800 for vehicle repair and maintenance.

11.     Finally, based upon information and belief, on a yearly basis, an independent operator may purchase approximately 2,167 gallons of gasoline and at an average cost of $2.50 per gallon, would pay approximately $5,417.50 per year for gasoline for the vehicle.

3

F.51

1
2
3

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4
5

   Executed this __5th__ day of June, 2009, at Hanover, Pennsylvania

6
7
8

_Randy O Siebert_
Randy Seibert

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

DECLARATION IN SUPPORT OF PETITION FOR REMOVAL

F.52

Exhibit G

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

---

Robert Davis, Michael Feltz,
and Mark Johns,
individually and on behalf of all
similarly situated individuals,

Plaintiffs,

v.

SOH Distribution Company, Inc.

Defendant.

---

Case File No. 09-237

**FIRST AMENDED CLASS ACTION
COMPLAINT AND JURY DEMAND**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, on behalf of themselves and others similarly situated, by and through their undersigned counsel, file this amended Complaint, and in support thereof state and aver as follows:

### NATURE OF ACTION

1.     This is a Class Action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a Class of employees of Defendant, for violations of, *inter alia*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL"), the Pennsylvania Minimum Wage Act, 43 P.S. § 333.01 *et seq.* ("MWA"), as well as other rights, obligations, privileges and benefits owed to the Class by Defendant.

2.     The Class consists of Defendant's drivers employed in Illinois, whom Defendant has improperly misclassified as, "independent contractors," but

G.53

who are, in actuality, "employees" of Defendant under both common and statutory law.

3.    This Action challenges both the misclassification of these workers and Defendant' denial to Plaintiffs and the Class of the rights, obligations, privileges and benefits owed to them as employees.

4.    Plaintiffs bring this action on behalf of themselves and other similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs and the other similarly situated individuals are individuals who were or are employed by Defendant as "distributors" and/or "independent contractors" and who delivered food products distributed by Defendant to retailers in Illinois.

## PARTIES

5.    Plaintiff Robert Davis is a resident of the County of Cook, State of Illinois. Plaintiff Michael Feltz and Plaintiff Mark Johns are residents of DuPage County, State of Illinois.

6.    Defendant SOH Distribution Company, Inc. is a Delaware corporation ( "Defendant." SOH Distribution Company, Inc. has its principal place of business in the City of Hanover, County of York, State of Pennsylvania.

7.    Snyder's of Hanover, Inc., manufactures and distributes snack food products in, *inter alia,* Illinois. Defendant SOH Distribution Company, Inc. employs local delivery drivers and/or distributors all of whom, at Snyder's of Hanover, Inc.'s direction and control, performs product delivery, in *inter alia,*

G·54

Illinois, to local retailers of snack food products manufactured and/or distributed by Snyder's of Hanover, Inc.

8.      Like all Members of the Class, Plaintiffs previously worked or work as delivery drivers in Illinois for Defendant and were misclassified as independent contractors.  Plaintiffs performed product delivery to local retailers of snack food products manufactured and/or distributed by Defendant.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) in that this is a class action, and the matter in controversy exceeds the sum of five million dollars ($5,000,000.00) exclusive of interest and costs, and members of the Class are citizens of a state different from Defendant.

10.     Venue is proper in this district because Defendant's principal place of business is  located in the city of Hanover, County of York, and as such, reside within this district.

## CLASS ACTION ALLEGATIONS

11.     This action has been brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of Plaintiffs and all others currently and formerly employed by Defendant as employees within the definition of "employee" in the common and statutory law, but whom, similar to the named Plaintiffs, are or were erroneously classified as "independent contractors." Occupations or jobs in which Class Members worked or work

3

G.55

include delivery drivers, distributors, and/or independent operators.  The Class is

specifically defined as follows:

> All individuals who worked for Defendant SOH Distribution
> Company, Inc., in Illinois, during the applicable limitations period as
> delivery drivers and/or distributors and/or independent operators and
> who were classified as "independent contractors" and thereby
> deprived of various protections under Pennsylvania and/or Illinois
> law.

12.    Members of the Class are so numerous that their individual

joinder is impracticable.  The precise number of Class Members is

unknown to Plaintiffs.  However, upon information and belief, Plaintiffs

believe it is in excess of 100.  The true number of Class Members is likely

to be known by Defendant, however, and thus, may be notified of the

pendency of this action by first class mail, electronic mail and by published

notice.

13.    There are numerous questions of law and fact common to Plaintiffs

and the Class, and those questions predominate over any questions that may affect

individual Class Members, and include the following:

> a.  whether Plaintiffs and the Class are employees of the Defendant;
>
> b.  whether Defendant has violated the rights of Plaintiffs and the
>     Class under the Pennsylvania Wage Act and Collection Law, 43
>     P.S. § 2601.1 *et seq.*;
>
> c.  whether Defendant has violated the rights of the Plaintiffs and
>     the Class under the Pennsylvania Minimum Wage Act, 43 P.S. §
>     333.101 *et seq.*;
>
> d.  whether Plaintiffs and the Class are entitled to injunctive relief
>     prohibiting Defendant from making the deductions from the

4

G.56

wages of Plaintiffs and the Class which are not authorized by law;

e. whether Plaintiffs and the Class are entitled to an accounting by Defendant of all hours worked on behalf of Defendant, all wages paid by Defendant, all deductions made from wages made by Defendant and the bases of all such deductions;

f. whether Plaintiffs and the Class are entitled to declaratory relief declaring that they are employees of Defendant;

g. whether Plaintiffs and the Class are entitled to injunctive relief requiring Defendant to convey to the Class the rights, privileges and benefits of employees;

h. whether the Defendant has been unjustly enriched at the expense of the Plaintiffs and the Class;

i. whether Plaintiffs and the Class are entitled to certain types of employee compensation and benefits because they are employees of Defendant as defined by common and statutory law, even though Defendant has misrepresented to Plaintiffs and the Class their employment status;

j. whether Plaintiffs and the Class has been misclassified as independent contractors pursuant to Defendant' distributor agreements;

k. whether Defendant unlawfully failed to provide worker's compensation insurance benefits and unemployment insurance benefits to Plaintiffs and the Class in violation of Pennsylvania and/or Illinois law; and

l. whether Defendant intentionally and/or negligently misrepresented to Plaintiffs and the Class they seek to represent their true employment status and thereby induced them to incur substantial expense and reliance on such representations.

14.    The named Plaintiffs are adequate representatives of the Class

because they were treated in the same manner as other Class Members by

Defendant and  have been damaged by this treatment in the same manner as other

G. 57

Class Members by their exclusion from employee compensation programs, plans and agreements, and employee benefit plans and rights.

15.    The Plaintiffs' claims are typical of the members of the Class. Plaintiffs are informed and believe that, like other delivery drivers and/or distributors, Plaintiffs were misclassified as "independent contractors," while actually being statutory and common law employees, and therefore deprived the protections of employee status under Pennsylvania and/or Illinois law. Plaintiffs had the same duties and responsibilities as other Class Members, and were subject to the same policies, practices, and the same or substantially similar Distributor Agreement.

16.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel with experience in complex wage and hour, employment, and class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the Class.

17.    The claims of the named Plaintiffs are identical to the claims of other members of the Class. The named Plaintiffs share the same interests as other members of the Class in this action because, like other Class Members, they were misclassified and suffered financial loss of thousands of dollars due to Defendant' wrongful misclassification. All members of the Class have been injured by the same actions of Defendant and in the same manner.

6

G.58

18.    Defendant has refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive and declaratory relief for this Class as a whole.

19.    Since Defendant continues to misclassify all of its drivers *inter alia* in Illinois as "independent contractors", the prosecution of separate actions by individual Class Members will create a risk of varying adjudications.

20.    A Class Action is the only realistic method available for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged herein. Were each individual Class Members required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings that would be contrary to the interest of justice and equity.

21.    A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, the common questions will predominate, and there will be no unusual manageability issues.

## FACTS GIVING RISE TO THE CAUSES OF ACTION

22.    Defendant is a corporation whose business consists of food product delivery and distribution to retail customers, using a centralized network of communication, sales, and sorting facilities integrating Class Members into that existing network of operations. Defendant hired Plaintiffs to deliver food products

7

G.59

to retailers based on times, locations, and for amounts determined solely by Defendant.

23.    In the past, Snyder's of Hanover, Inc., employed delivery drivers and/or distributors as "employees" and not independent contractors, thus providing those drivers with the protections and benefits of employee status under Pennsylvania and/or Illinois law.

24.    In or around 2001, Snyder's of Hanover, Inc. formed Defendant SOH Distribution Co., Inc.  SOH Distribution Co., Inc. then entered into contractual employment agreements with many of the same drivers and/or distributors that were previously classified as employees.  The employment agreements classified the drivers and/or distributors as "independent contractors" and denied them the protections of employee status under Pennsylvania and/or Illinois law, even though these same drivers had previously been classified as "employees."

25.    Defendant employs hundreds of delivery drivers to deliver its food products throughout the United States.  As a condition of employment, each delivery driver is required to sign a form contract entitled "Distributor Agreement," that mischaracterizes each driver as an "independent contractor." The Distributor Agreement conceals the true nature of the relationship between Defendant and its drivers; that of employer and employee.

26.    Each delivery driver must sign a "Distributor Agreement," and addenda thereto, as a mandatory condition of employment.  The Distributor

G. 60

Agreement between each member of the Class and Defendant is the same in all

material respects.  The Distributor Agreement between Plaintiffs and Class

Members with Defendant contains the same material terms, with only a few minor

and insubstantial differences.  See sample Distributor Agreements attached

collectively as Exhibit "A".

     27.    The Distributor Agreement contains various statements purporting to

classify Plaintiffs and Class Members as independent contractors.  At the same

time, the Distributor Agreement retains to the company, *inter alia*, the right to

assign delivery stops to each driver, the right to temporarily or permanently

transfer portions of any route to another with or without compensation, the right to

add sales areas or accounts to a driver's territory, the right to remove sales areas or

accounts from a driver's territory, the right to control the driver's profit margins

for Defendant's national accounts, the right to handle customer complaints against

the drivers and to take disciplinary action, the right to limit assignability of the

contract, the right to limit the business entities which may be party to the contract,

the right to withhold pay for certain specified expenses, the right to require

purchase of specified insurance and numerous other purchases by drivers, the right

to require completion of specified paperwork, the right to apply trademarks and

decals to driver's sales vehicles, the right to unilaterally terminate the Agreement

for failure to maintain "satisfactory sales and service," greater Agreement

termination rights than those provided to drivers, the right to be indemnified by the

G.61

driver, the right to unilaterally vary the standards, guidelines, and operating procedures and requirements of drivers, and other rights reserved to Defendant.

28.    The Distributor Agreement is and at all relevant times has been a contract of adhesion, drafted exclusively by Defendant and/or its legal counsel, with no negotiation with drivers, who are required to sign the Distributor Agreement as a condition of employment.  Plaintiff and Class Members are required to sign the form contract as is, without any changes made to the terms contained therein.  The Distributor Agreement is and at all material times has been unlawful, unconscionable and fraudulent in form and effect.

29.    Defendant maintains compensation and benefit plans, agreements and programs available to persons who are "employees" of Defendant.  Upon information and belief, the benefit plans include: Health Benefit Plan, Life Insurance Plan, Short-term and Long-term Disability Plans, Accidental Death & Dismemberment and Survivor Income Plan, Employee Stock Purchase Plan, Business Travel Accident Plan, and Retirement and 401(k) Savings Plans.  In addition, employees of Defendant receive other compensation programs, plans, rights, and benefits, including vacation, holidays, sick leave, and other types of paid leave.

30.    Plaintiffs, and Class Members, were denied the accoutrements of employment, including, but not limited to:

    a.   wages;

    b.   holiday pay;

G. 62

   c. workers' compensation;

   d. unemployment insurance;

   e. contributions to Defendant's retirement plan;

   f. income tax withholding; and

   g. meal, break and rest periods.

31.     Plaintiffs and Plaintiff Class Members have been excluded from the foregoing compensation plans and programs and benefit plans for all or a portion of their employment at Defendant due to their misclassification as non-employees.

32.     Plaintiffs and Plaintiff Class Members have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant requires them to purchase under the contract.

33.     Plaintiffs, and Class Members, were required to pay Defendant's operating expense, all of which should have been paid by Defendant, including, but not limited to:

   a. delivery vehicle purchase, lease or rental;

   b. various insurances, including vehicle insurance and work accident insurance;

   c. delivery vehicle maintenance and repairs;

   d. purchase and maintenance of logos and uniforms;

   e. fuel;

   f. the costs of product loss, product return, and product expiration; and,

G.63

g. "business support," including equipment necessary to transact business.

34.    Despite Defendant's control over virtually all material aspects of the employment relationship, and despite the unequivocal command of applicable statutes and case law to the effect that workers such as Plaintiffs are entitled to the protection due employees under Pennsylvania and/or Illinois law, Defendant misclassified and continues to misclassify its drivers as independent contractors. As a result, these drivers are deprived of the rights and protections guaranteed by Pennsylvania and/or Illinois law to employees, and they are deprived of employer-financed workers' compensation coverage and unemployment insurance benefits.

35.    The terms and conditions of drivers' Distributor Agreements require these drivers to purchase, operate and maintain expensive trucks for Defendant's exclusive benefit and to work under other unlawful conditions. Defendant's mischaracterization of its drivers as independent contractors, the concealment and/or non-disclosure of the true nature of the relationship between Defendant and its drivers and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful and fraudulent business practice by Defendant which this Court should enjoin.

12

G.64

### COUNT I
### PENNSYLVANIA MINIMUM WAGE ACT
### 43 P.S. § 333.01 *et seq.*

36.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

37.    The MWA provides, in relevant part, as follows:

> Every employer shall pay to each of his employees wages for all hours worked at a rate of not less than [federally mandated minimum wage].

43 P.S. § 333.104(a).

38.    Plaintiffs and the Class are employees of Defendant within the meaning of the MWA and, as such, are entitled to the benefits of the MWA's minimum wage requirements.

39.    Defendant is an employer within the meaning of the MWA.

40.    The conduct described above and throughout the Complaint regarding the Defendant's misclassification of delivery drivers as "independent contractors," Defendant's exercise of supervision and control over the drivers and improper deductions from their pay were conducted in the Commonwealth of Pennsylvania in violation of Pennsylvania's MWA.

41.    Pennsylvania's MWA applies to the claims of all Class Members because the conduct which constitutes violations of the MWA by the Defendant occurred within the Commonwealth of Pennsylvania. Moreover, the Distributor Agreement signed by Plaintiffs and all Class Members were prepared, negotiated and entered into in Pennsylvania.

13

G.65

42.    While working for Defendant, each delivery driver is required to pay for various operating expenses, which are properly the expenses of Defendant, including but not limited to, product loss and product return, and vehicle expense and insurance claims in violation of the MWA.

43.    Each delivery driver is obligated to pay for such expenses and the cost of such expenses are not reimbursed in any way by Defendant.

44.    In calculating delivery drivers' wages, no deduction or credit is made for the cost of the expenses which each delivery driver is required to pay. The costs of such expenses, however, when deducted or credited against each employee's weekly wages during the week in which the purchases are made, has, at times, resulted in such employee being paid less than the appropriate minimum wage under Pennsylvania and/or Illinois Law.

45.    Plaintiffs and Class Members have not expressly and freely given written consent to such deductions, and these deductions are not made in response to a valid wage assignment or deduction order.

46.    Defendant has withheld said funds unlawfully without providing Plaintiffs and Class Members with advance notice of the amounts, reasons or documentation to justify such deductions and absent any lawfully sufficient reason for such conduct.

47.    Defendant's uniform policy of requiring its delivery drivers to pay for various operating expenses which were properly the expenses of Defendant, while not reimbursing the delivery drivers for such payments, and not crediting

14

G. 66

such expenditures against employees' wages for purposes of calculating minimum wages, represents and results in violations of the MWA's minimum wage requirements.

48.     Alternatively, Plaintiffs seek to recover for Defendant's unlawful deductions from their and Class Members' wages under the Wage Act of Plaintiffs' home state or residence.  Specifically, Defendant has unlawfully withheld monies from the compensation earned by Plaintiffs and Class Members for business expenses of Defendant, including but not limited to, product loss and product return, and vehicle expenses and insurance claims in violation of Illinois law.

49.     Plaintiffs and other members of the Class have been damaged as a proximate result of Defendant's violation of the wage acts and laws and have suffered, actual, ascertainable losses by virtue of Defendant's misclassification as independent contractors and illegal deductions from their wages.

50.     As a consequence of Defendant's employment practices regarding its delivery drivers, Plaintiffs and the Class were denied statutory minimum wages.

**COUNT II**
**PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW**
**43 P.S. § 260.1 _et seq._**

51.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

52.     The WPCL provides, in relevant part, as follows:

15

G.67

> Every employer shall pay all wages, other than fringe benefits and wage supplements, due to employees on regular pay days designated in advance by the employer…all wages, other than fringe benefits and wage supplements, earned in any pay period shall be due and payable within the number of days after the expiration of said pay period as provided in a written contract of employment or, if not so specified, within the standard time lapse customary in the trade or within fifteen days from the end of each pay period. The wage shall be paid in lawful money of the United States or check, except that deductions provided by law, or as authorized by regulation of the Department of Labor and Industry for the convenience of the employer, may be made…

43 P.S. § 260.3.

53.    Plaintiffs and the Class are employees of Defendant within the meaning of the WPCL and, as such, are entitled to timely payment of wages due to them.

54.    Defendant is an employer within the meaning of the WPCL.

55.    The conduct described above and throughout the Complaint regarding the Defendant's misclassification of delivery drivers as independent contractors, Defendant's exercise of supervision and control over the drivers and improper deductions from their pay were conducted in the Commonwealth of Pennsylvania in violation of Pennsylvania's WPCL.

56.    Pennsylvania's WPCL applies to the claims of all Class Members because the conduct which constitutes violations of the WPCL by the Defendant occurred within the Commonwealth of Pennsylvania. Moreover, the Distributor Agreement signed by Plaintiffs and all Class Members was prepared, negotiated and entered into in Pennsylvania.

16

G·68

57.    Defendant's policy of deducting, either directly or by a separate transaction, amounts in the wages of Plaintiffs and the Class for operating expenses which are properly the obligation of Defendant as described above, results in violation of WPCL.

58.    Plaintiffs and the Class have entered into a Distributor Agreement with Defendant pursuant to which Plaintiffs and the Class are to receive certain wages and compensation for their work as delivery drivers for Defendant.

59.    Defendant's deduction from wages due to Plaintiff and the Class are not authorized deductions within the meaning of the WPCL and, upon information and belief, have not been authorized by the Pennsylvania Department of Labor and Industry.

60.    Plaintiffs and Class Members have not expressly and freely given written consent to such deductions, and these deductions are not made in response to a valid wage assignment or deduction order.

61.    Defendant has withheld said funds unlawfully without providing Plaintiffs and Class Members with advance notice of the amounts, reasons or documentation to justify such deductions, and absent any lawfully sufficient reason for such conduct.

62.    Any consent or agreement by Plaintiffs and the Class relayed to the aforesaid deductions from their wages is unenforceable as contrary to public policy, as set forth in the WPCL.

17

G.69

63.    Defendant's uniform policy of requiring its delivery drivers to pay for various operating expenses which were properly the expenses of Defendant, while not reimbursing the delivery drivers for such payments, and not crediting such expenditures against employees' wages for purposes of calculating minimum wages, represents and results in violation of the WPCL.

64.    Alternatively, Plaintiffs seek to recover for Defendant's unlawful deductions from their and Class Members' wages under the Wage Act of Plaintiffs' home state or residence.  Specifically, Defendant has ve unlawfully withheld monies from the compensation earned by Plaintiffs and Class Members for business expenses of Defendant, including but not limited to, product loss and product return, and vehicle expenses and insurance claims in violation of Illinois law.

65.    Plaintiffs and other members of the Class have been damaged as a proximate result of Defendant's violation of the wage acts and laws and have suffered, actual, ascertainable losses by virtue of Defendant's misclassification as independent contractors and illegal deductions from their wages.

66.    As a consequence of Defendant's employment practices regarding its delivery drivers, Plaintiffs and the Class were denied statutory minimum wages.

## COUNT III
## DECLARATORY RELIEF

67.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

18

G-70

68.    An actual controversy has arisen between Plaintiffs and Class

Members, and Defendant, relating to the following matters:

    a.  Whether Defendant has unlawfully misclassified Plaintiffs and
       Plaintiff Class Members as independent contractors and has thus
       denied Plaintiffs and Class Members of the common benefits of
       employee status, such as:

        i.  wages;

        ii.  holiday pay;

        iii.  workers' compensation;

        iv.  unemployment insurance;

        v.  contributions to Defendant's retirement plan;

        vi.  income tax withholding; and

        vii.  meal, break and rest periods.

    b.  Whether Defendant has unlawfully failed to pay benefits and
       compensation owing in a timely manner to Plaintiffs and Class
       Members whose employment with Defendant ended, as required
       by Pennsylvania and/or Illinois law.

    c.  What amounts Plaintiffs and Class Members are entitled to
       receive in compensation and benefits.

    d.  What amounts Plaintiffs and Class Members are entitled to
       receive in interest on unpaid compensation due and owing.

    e.  What amounts Plaintiffs and Class Members are entitled to
       receive from Defendant in waiting time penalties.

69.    Plaintiffs and Class Members further seek entry of declaratory

judgment in their favor which declares Defendant's practices, as heretofore

alleged, to be unlawful and which provides for recovery of all sums determined by

19

G.71

this Court to be owed by Defendant, and each of them, to Plaintiffs and Class Members.

## COUNT IV
### REQUEST FOR INJUNCTIVE RELIEF

70.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

71.    Defendant will continue to misclassify Plaintiffs and Class Members as independent contractors and unlawfully deny them the common benefits of employee status.

72.    Plaintiffs and Class Members have been injured and damaged, and are threatened with injury and damages, by Defendant's continued misclassification and unlawful refusal to pay all compensation and benefits as heretofore alleged, and Plaintiffs and Class Members have no adequate remedy at law.

73.    Defendant has acted, and threatened to act, on grounds generally applicable to the individual members of the Class, thereby making appropriate preliminary and permanent injunctive relief enjoining Defendant and its agents from practicing unlawful practices heretofore alleged.

20

G.72

## UNJUST ENRICHMENT

74.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

75.     Plaintiffs bring this Count V in the alternative to their claims under the WPCL and MWA. The Distributor Agreement is and at all times mentioned herein has been a contract of adhesion, drafted exclusively by Defendant and/or their legal counsel, with no negotiation with drivers who are requested to sign the Agreement as a condition of employment. Plaintiffs and the Class are required to sign the form contract as is, without any changes made to the terms contained therein. Plaintiffs and the Class had no meaningful choice about whether to accept the provisions of the Agreement and such provisions are oppressively one-sided in favor of Defendant. The Agreement is, and at all material times has been, unlawful and unconscionable in form and effect, and therefore unenforceable.

76.     The Agreement is an illegal and unenforceable contact because its provisions violate the public policy of the Commonwealth of Pennsylvania and/or the State of Illinois, which is to protect employees from being denied the accoutrements of employment, as detailed herein.

77.     Plaintiffs and all the Class Members were required to pay operating expenses detailed herein which were properly the expenses of Defendant.

78.     Defendants were unjustly enriched by requiring Plaintiffs, and other members of the Class, to pay its operating expenses.

G.73

79.    The performance of work activities as described in this Complaint

conveys a benefit to Defendant, which it has knowingly received.

80.    Defendant is not entitled to this benefit, and retaining it without

paying for it would be unjust to Plaintiffs and Class Members.

81.    Consequently, Plaintiffs and Class Members are entitled to recover

the reasonable value of the benefit conveyed to Defendant by the performance of

the work activities as described in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request of this Court the following relief on

behalf of themselves and all others similarly situated:

a.    For an Order certifying Plaintiffs' Class, appointing Plaintiffs
as Class Representatives, and appointing the undersigned
counsel of record as Class Counsel;

b.    Entering an Order for injunctive and declaratory relief and
enjoining Defendant from pursuing the policies, acts and
practices described in this Complaint;

c.    Enter an Order requiring Defendant to rescind the Distributor
Agreement and awarding restitution compensating Plaintiffs
and the Class for the reasonable value of the benefit provided
to Defendant;

d.    Enter judgment in favor of each Class Member for damages
suffered as a result of the conduct alleged herein, to include
interest and pre-judgment interest;

e.    Award Plaintiffs reasonable attorney fees and costs;

f.    Award Plaintiffs and the Class punitive damages in an
amount to be determined at trial; and

g.    Grant such other and further legal and equitable relief as this
Court deems just and necessary.

22

G.74

## JURY DEMAND

Plaintiffs, on behalf of themselves and members of the Class, hereby

demand a trial by jury on all issues so triable.


Dated: March 4, 2009                    LEVIN FISHBEIN SEDRAN & BERMAN

_____
Arnold Levin, Esquire #02280
Charles E. Schaffer, Esquire #76259
Daniel C. Levin, Esquire #80013
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile:  (215) 592-4669

HALUNEN & ASSOCIATES
Clayton D. Halunen MN #219721
Charles V. Firth MN #0257825
80 South Eighth Street
1650 IDS Center
Telephone: (612) 605-4098
Fax: (612) 605-4099

**ATTORNEYS FOR PLAINTIFFS**

G.75

## PROOF OF PERSONAL SERVICE

I am a citizen of the United States and employed in the County of Orange, State of California, at the law firm of O'Melveny & Myers, located at 610 Newport Center Drive, 17th Floor, Newport Beach, California 92660-6429. I work for a member of the bar of this Court, who directed me to serve these documents. I am over the age of eighteen years and not a party to the within action. On June 9, 2009 I caused the personal service of the following document(s):

**DEFENDANTS, SOH DISTRIBUTION COMPANY, INC.'S AND G&A SNACK DISTRIBUTING, INC.'S NOTICE OF REMOVAL**

by requesting that an agent or employee of First Legal Support Services deliver to the office of the recipient named below, either by handing the document(s) to the recipient or by leaving the document(s) with the receptionist or other person apparently in charge of the recipient's office:

GIGLIOTTI & GIGLIOTTI, L.L.P.
Joseph J. Gigliotti, State Bar No. 144979
434 East Chapman Ave.
Fullerton, California 92832

Tel: (714) 879-1712
Fax: (714) 879-3439

SPIRO MOSS LLP
Ira Spiro, State Bar No. 67641
11377 West Olympic Blvd., Fifth Floor
Los Angeles, California 90064

Tel: (310) 235-2468
Fax: (310) 235-2456

Email: ispiro@smbhblaw.com

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on June 9, 2009, at Newport Beach, California.

SIGNATURE: _~Linda Evington~_

PRINTED NAME:    Linda Evington

76

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV09- 685 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[X] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) <br> CHARLEE HARGIS | DEFENDANTS <br> SOH DISTRIBUTION COMPANY, INC., AND <br> G & A SNACK DISTRIBUTING, INC. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br><br> Joseph J. Gigliotti, Gigliotti & Gigliotti, LLP, 434 East Chapman Ave., Fullerton, CA 92832, Tel: (714) 879-1712; Ira Spiro, Spiro Moss LLP, 11377 W. Olympic Blvd., Fifth Fl., Los Angeles, CA 90064, Tel: (310) 235-2468. | Attorneys (If Known) <br><br> Framroze M. Virjee & Adam J. Karr, O'Melveny & Myers LLP, 620 Newport Center Dr., 17th Fl., Newport Beach, CA 92660, Tel: (949) 760-9600. <br> Joel L. Lennen, Eckert Seamans Cherin & Mellott, LLC, 600 Grant Street, 44th Fl., Pittsburgh, PA 15219, Tel: (412) 566-6000. |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes  ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sections 1332 and 1441.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☒ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**  Case Number:  **SACV09-00685 AG (MLGx)**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | SOH Distribution Company, Inc. - Pennsylvania<br>G &A Snack Distributing, Inc. - Pennsylvania |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Throughout California | Pennsylvania |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date June 9, 2009.

   **Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |